Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Eastern    District of    Virginia

Richmond    Division

Case No. 3:18cv00288

*(to be filled in by the Clerk's Office)*

| | |
|---|---|
| Ivan E. Raiklin | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) ) |
| -v- | ) ) ) |
| 1.  Virginia Department/Board of Elections; | ) |
| 2.  Christopher E. Piper, in his official capacity as the Commissioner, Virginia Department of Election; | ) ) |
| 3.  John Findlay, in his official capacity as the Executive Director, Republican Party of Virginia; | ) ) |
| 4.  Republican Party of Virginia; | ) |
| 5.  Commonwealth of Virginia | ) ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued.  If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |

Emergency   1ER

## COMPLAINT AND REQUEST FOR INJUNCTION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Ivan E. Raiklin, Candidate for U.S. Senate and Petitioner |
| Street Address | 2221 S. Clark St. |
| City and County | Arlington |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

_____

| | |
|---|---|
| State and Zip Code | VA 22202 |
| Telephone Number | 202-288-2541 |
| E-mail Address | ivan@raiklin.com |

**B.      The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | *Commissioner*   *IER*  Virginia Board/Department of Elections |
| Job or Title *(if known)* | |
| Street Address | 1100 Bank Street |
| City and County | Richmond |
| State and Zip Code | VA 23219 |
| Telephone Number | 804-864-8901 |
| E-mail Address *(if known)* | info@elections.virginia.gov |

Defendant No. 2

| | |
|---|---|
| Name | Christopher E. Piper, In his Official Capacity as |
| Job or Title *(if known)* | Commissioner, Virginia Department of Elections |
| Street Address | 1100 Bank Street |
| City and County | Richmond |
| State and Zip Code | VA 23219 |
| Telephone Number | 800-552-9745 |
| E-mail Address *(if known)* | info@elections.virginia.gov |

Defendant No. 3

| | |
|---|---|
| Name | John Findlay, In his official capacity as |
| Job or Title *(if known)* | Executive Director, Republican Party of Virginia |
| Street Address | 115 E. Grace Street |
| City and County | Richmond |
| State and Zip Code | VA 23219 |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

| | |
|---|---|
| Telephone Number | (804) 780-0111 |
| E-mail Address *(if known)* | jfindlay@rpv.org |

Defendant No. 4

| | |
|---|---|
| Name | *Executive Director* IER<br>Republican Party of Virginia |
| Job or Title *(if known)* | |
| Street Address | 115 E. Grace Street |
| City and County | Richmond |
| State and Zip Code | Virginia 23219 |
| Telephone Number | 804-780-0111 |
| E-mail Address *(if known)* | info@virginia.gop |

Defendant No. 5

| | |
|---|---|
| Name | *Attorney General* IER<br>Commonwealth of Virginia |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | Richmond |
| State and Zip Code | Virginia 23219 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

    X   Federal question                          Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

that             List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution are at issue in this case.

    1. U.S. Constitution: 1st Amendment, 14th Amendment;
    2. Voting Rights Act

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

    1.     The Plaintiff(s)

       a.     If the plaintiff is an individual

          The plaintiff,                                           , is a citizen of the

*(name)*

          State of                                              .

*(name)*

       b.     If the plaintiff is a corporation

          The plaintiff,                                           , is incorporated

*(name)*

          under the laws of the State of *(name)*                               ,

          and has its principal place of business in the State of *(name)*

          .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

   a.      If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of

   the State of *(name)* _____ . Or is a citizen of

   *(foreign* _____ .

nation)

   b.      If the defendant is a corporation

   The defendant, *(name)* _____ , is incorporated under

   the laws of the State of *(name)* _____ , and has its

   principal place of business in the State of *(name)* _____ .

   Or is incorporated under the laws of *(foreign nation)* _____ ,

   and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing*
the      *same information for each additional defendant.)*

3.      The Amount in Controversy

   The amount in controversy–the amount the plaintiff claims the defendant owes or the amount
at      stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.     Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

   A.      Where did the events giving rise to your claim(s) occur?

-**March 26, 2018** in the evening Ivan Raiklin spoke with Dino Ponce the Republican Party of Virginia (RPV) Political Director to schedule a pre-check on Wednesday morning March 28 at 10:30am.  Phone calls were made between Ivan Raiklin and the RPV throughout the day to find out a good day and time to schedule the pre-check.  The entire time, John Findlay, Executive Director of the RPV, provided significant push back claiming that other candidates were slotted to do a pre-check on Tuesday March 27 and Wednesday March 28.  These other two candidates were not able to achieve the 10,000 signature threshold to even conduct a pre-check. Meanwhile, the Ivan Raiklin for U.S. Senate Campaign informed the RPV Executive Director that they would have well over 11,000.  The RPV Director mentioned that 12,500 was needed to initiate a pre-check.  So the Campaign focused all efforts and during all of Monday March 26, Tuesday March 27, and the morning of Wednesday March 28 attained the minimum 12,500 needed to conduct a pre-check.

Mar 26 9:55 AM 804.828.0636 Henrico, VA Richmond, VA 2— Findlay (Number depicts phone number and number of minutes the call lasted)

Mar 26 9:57 AM 804.828.1111 Henrico, VA Richmond, VA 9—Findlay/RPV coordinated to do pre-check on Wednesday

Mar 26 10:37 AM 804.828.9502 Richmond, VA Richmond, VA 7—RPV

-**March 28**

Two phone calls were made to the RPV Political Director to inform him that some signatures were still being notarized and we would only be at the RPV headquarters at 11:30am:

Mar 28 10:19 AM 804.397.4771 Richmond, VA Richmond, VA 8—We would not be getting to RPV until closer to 11:30 as we were still getting the last few signatures notarized

Mar 28 11:00 AM 804.397.4771 Richmond, VA Richmond, VA 4—Update of our status as Jacob Carasella and Nicholas Hoskins were showing up to do pre-check at this time.

At 11:30am the Republican Party of Virginia (RPV), under the supervision of Executive Director John Findlay at 115 E. Grace Street, Richmond VA 23219 initiated a pre-check of the 12,691 petition signatures submitted by the Ivan Raiklin for US Senate campaign to be certified for inclusion as a U.S. Senate candidate on the June 12, 2018 Republican primary ballot.  Va. Code §§ 24.2-506 requires a minimum of 10,000 total signatures of registered voters from Virginia and a minimum of 400 signatures from each of the 11 congressional districts to favorably certify as a U.S. Senate candidate in Virginia.  The campaign submitted a minimum of over 600 signatures from each of the congressional districts pursuant to Va. Code §§ 24.2-506, the Virginia Department of Elections US Senate Candidate Bulletin and the RPV Statewide Ballot Access Guidance.  At ~16:15 the Executive Director, John Findlay, after two congressional districts were checked and cleared, stated he was not comfortable with how the check was going and demanded the campaign (using expletives) return the following day, March 29, the last day the signatures were due to the Virginia Department of Elections.  Raiklin attempted to influence the RPV Chairman, John Whitbeck via phone call/text to step in and overrule this decision, however, was unsuccessful.

B.      What date and approximate time did the events giving rise to your claim(s) occur?

Continued from A above. This decision denied the Raiklin campaign any ability to recover from any petition signature deficiencies as time was fleeting to deploy any people to collect more signatures should the need arise. 24 hours of recovery time turned into none with this decision to delay.

Here are the phone calls made that day and the summary of conversations had along with the # of minutes each call took:

PHONE CALL:  Mar 28 4:18 PM 703.477.8476 Richmond, VA VM Deposit, CL 1 -- -- -- Call to John Whitbeck, Chairman of the Republican Party of Virginia, did not answer call.

TEXT MESSAGES:
        4:19pm Raiklin:  "Need to talk ASAP!" We just got thrown out during the count/ pre-check."
        4:20pm Whitbeck: "I can't pick up" "Who threw u out?"
        4:20pm Raiklin: "Findlay, saying that he wants to do it tomorrow."
        4:22pm Raiklin: "Everything was going smooth with Dino, we cleared 2 districts and in the middle of counting two other districts, the database started "going slow". Findlay said I don't like how this is going     and said to come back in tomorrow at 9 am."
        4:24pm Whitbeck: "Lemme step our [sic] and call him"

PHONE CALL:
Mar 28 4:40 PM 703.477.8476 Richmond, VA VM Deposit, CL 1 -- -- —John Whitbeck did not answer.

TEXT MESSAGES:
        4:47 pm Raiklin: "Please call me, I am not comfortable with waiting until tomorrow for pre-check...I sense there is something more. Particularly the way he interacted with my staff without my presence.  Disrespectful with expletives."
        4:52 Whitbeck: "He says your staff refused to say if he was recording him"
        4:53 Whitbeck: "And he warned him four times to stop interrupting him"
        4:54 Raiklin: "My staff tell me definitively they were not recording.
        4:59 Raiklin: "First question my CM asked was why are we interrupting the count and second question was can we get Ivan to be here to hear this for transparency … Dino's non verbal queues exuded something way more than just a procedural issue.  Please call, much more complicated than text."
Ivan Raiklin was unsuccessful in convincing the Chairman of the Republican Party, John Whitbeck to have John Findlay change his mind about completing the pre-check on March 28.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

---

C.      What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Continued from B above.

-**On March 29** at 0900am, the campaign returned to conduct the pre-check certification at 115 E. Grace Street, Richmond, VA 23219. Per the RPV Statewide Ballot Access Guidance, the RPV proceeded to count the signatures and then check each congressional district with the 9th congressional district being the last one checked (the 9th is the farthest district geographically from Richmond). At approximately 1500 the Campaign completed the pre-check of the ten out of the eleven congressional districts with the 9th still to be counted, but with the need to submit the petitions to the Department of Elections by the 1700 filing deadline. After the Raiklin campaign submitted the petition and filing documents to the DoE timely, the RPV Political Director obtained those petitions to continue the check of the 9th Congressional district in what now became the post check. The RPV disqualified a sufficient number of signatures from the 9th Congressional District using an incorrect database with faulty data (GOP Data Center) rather than the statutory required Virginia Voter Registration System published by the Department of Elections and further concluded that the Raiklin campaign fell short of the required 400 signatures to certify as a US Senate candidate in the Republican primary on June 12, 2018. Present were Nicholas Hoskins (Raiklin Campaign Manager), Jacob Carasella (Raiklin Political Director), Ivan Raiklin (US Senate Candidate), John Findlay (RPV Executive Director), Phil Fickes (Raiklin Field Director) John March (RPV Communications Director), Dino Ponce (RPV Political Director). (1st, 14th Amendments U.S. Constitution).

After disqualification was complete, the first person to call me was the Chairman of the Republican Party of Virginia with the following:

Mar 29 9:14 PM 703.477.8476 Richmond, VA Incoming, CL 14 -depending on how you take this will determine your political future, and also urged Raiklin that his next call after hanging up with Whitbeck should be to Delegate Nick Freitas.

-**On April 4**, the Raiklin campaign filed an appeal of petition signature insufficiency with the Department of Elections pursuant to 1VAC20-50-30 within the required 5 days.

-**On April 5**, the Department of Elections (DoE) responded via email and postal service with a refusal to hear an appeal. The DoE stated that the appeal process was only afforded to independent candidates and did not apply to party nominees. In its response, the Department of Elections wrote, "Virginia law does not allow candidates for nomination by a party primary to appeal this type of determination to the State Board of Elections. Sections 24.2-506 and 24.2-543 of the Code of Virginia and 1VAC20-50-30 [...] establish petition requirements and appellate procedures for independent candidates, which do not apply to candidates for nomination by a political party. Instead, petition requirements for candidates for nomination by a non-presidential primary are established by Va. Code Section 24.2-521. Section 24.2-521 does not provide an avenue by which candidates for nomination by a primary can appeal a political party's determination that they have failed to submit sufficient petition signatures. As the laws and regulation you reference do not apply to individuals who are seeking their political party's nomination in a primary election, and Virginia law does not authorize an appeal for candidates for party nomination, thus you are not eligible for an appeal hearing pursuant to Section 24.2-506, and a hearing will not be scheduled."

-**On April 6**, the RPV afforded the Raiklin campaign the ability to conduct a partial recount using the Montgomery County Voter Registration List from the Virginia Voter Registration System, rather than the entire 9th Congressional District Voter Registration List.  The partial recount identified 62 incorrectly disqualified signatures before it was stopped.

-**On April 20**, after some push back from the Executive Director of the RPV, the Raiklin campaign finally obtained copies of all of the 9th congressional district petition signatures that the RPV checked to do a full audit against the Virginia Voter Registration System from the 9th congressional district.

-**April 23**, Ivan Raiklin for US Senate Campaign mailed a money order in the sum of $923 to the Virginia Department of Elections with an invoice to purchase the 9th Congressional District Database.

-**April 24,** At 9:22 EST the US Postal Service delivered the Money Order to the Board of elections, see:  Tracking #:  9505514846438114210005

Without access to the 9th Congressional District Virginia Voter Registration System, the Raiklin campaign has identified 415 signatures of Virginia registered voters from the 9th Congressional District between the initial partial recount using the Montgomery County Virginia Voter Registration System data and the GOP Data Center data.  This includes at least 309 of these signatures certified by the RPV and another minimum of 106 petitioners that were disqualified by 1VAC20-50-20 section C. 5 and section E. 3.

-**April 25**:  Ivan Raiklin contacted the Virginia Department of Elections to confirm the Money Order for $923 had arrived with the 3 page invoice,  the call was placed with Andrea T. Walker, Administrative & Office Specialist, Department of Elections at 1100 Bank Street, Richmond, Virginia 23219, email:  andrea.walker@elections.virginia.gov to the phone number 804 864-8902, alternate number is 804 552-9745.  Andrea explained that the package did not arrive, which did not match with the information from the USPS' website using the tracking number:  9505514846438114210005.  Receipts attached.

-**April 27**-The Campaign confirmed through the United States Postal Service that the package had in fact arrived at the Department of Elections on Tuesday morning.  However, after further inquiry, the Virginia Department of Elections at 2:40pm stated that because Ivan Raiklin was "no longer a candidate", the Department of Elections would not provide the 9th Congressional District Virginia Voter Registration System List to the campaign and the only way that Ivan Raiklin could obtain the database was to file his candidacy as an independent candidate, triggering another filing fee of candidacy.  Raiklin refused to disown the Republican Party and thus was not able to obtain the 9th Congressional District Virginia Voter Registration System List to conduct a proper analysis of the petition signatures from the 9th Congressional District.

## IV.    Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Monetary damages now or in the future will not afford the plaintiffs to have the candidate of their choosing on the primary ballot.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1.  Enjoin the Virginia Board of Elections from printing of ballots for the June 12 Republican primary election without the name Ivan E. Raiklin thereon as a candidate for the United States Senate.

2.  Enjoin the Virginia Board of Elections to move the primary election date to an equal number of days that the Raiklin campaign was held off of the ballot. For instance, if the Board of Elections certifies the Raiklin for US Senate candidacy on April 27 (rather than the original date of March 29), it would be equitable to move the election 28 days from June 12 to July 10, 2018.

3. Monetary damages in the amount of $361,823

-Loss of campaign fundraising ability for all of April $350,000

-Attorney Fees $10k

-9th Congressional District Database $923

-Travel Expenses $500

-Filing Fee $400

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

---

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,     and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause   unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be     served.  I understand that my failure to keep a current address on file with the Clerk's Office may result     in the dismissal of my case.

Date of signing:     4/30/2018

Signature of Plaintiff     *Ivan Riklin*

Printed Name of Plaintiff     Ivan     Raiklin

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| IVAN E. RAIKLIN | ) | |
| | ) | |
| V. | ) | CIVIL NO.  COMPLAINT |
| | ) | |
| JOHN FINDLAY, IN HIS | ) | |
| OFFICIAL CAPACITY AS THE | ) | |
| EXECUTIVE DIRECTOR OF | | |
| THE REPUBLICAN PARTY OF | | |
| VIRGINIA; | | |
| REPUBLICAN PARTY OF | | |
| VIRGINIA; | | |
| CHRISTOPHER E. PIPER, IN | | |
| HIS OFFICIAL CAPACITY AS | | |
| THE COMMISSIONER, | | |
| VIRGINIA DEPARTMENT OF | | |
| ELECTIONS; | | |
| VIRGINIA DEPARTMENT OF | | |
| ELECTIONS; | | |
| COMMONWEALTH OF | | |
| VIRGINIA | | |

### **PARTIES**

1. Your Plaintiff, Ivan E. Raiklin is and was, at all times relevant herein, a citizen of the United States and a resident of Fairfax County, Commonwealth of Virginia, and candidate for the United States Senate for the Commonwealth of Virginia, seeking the Republican nomination in the 2018 party primary, all within the jurisdiction of this court. 2221 Clark Street, Arlington, VA 22202. Email: ivan@raiklin.com, Phone:  202-288-2541

2.  Defendant John Findlay,  is and was, at all times relevant herein, a citizen of the United States, a resident of Virginia, in his official capacity as Executive Director, Republican

1

Party of Virginia ("RPV"), resident of the Commonwealth of Virginia. 115 E. Grace Street, Richmond, VA 23219, email: jfindlay@rpv.org, 804-780-0111

3. Defendant Republican Party of Virginia, is and was at all times relevant herein, a political party registered in the Commonwealth of Virginia. For contact information see 2 above.

4. Defendant Christopher E. Piper, is and was, at all times relevant herein, a citizen of the United States, a resident of the Commonwealth of Virginia, in his official capacity as the Commissioner, Virginia Department of Elections ("DoE") DoE and VBE are used interchangeably in this brief, additionally, Department of Elections and Virginia Board of Elections are used interchangeably in this brief. Washington Building, 1100 Bank Street, First Floor, Richmond, VA 23219, info@elections.gov; 800-552-9745

5. Defendant Commonwealth of Virginia Department of Elections, is and was, at all times relevant herein, an executive branch entity of the Commonwealth of Virginia, Washington Building, 1100 Bank Street, First Floor, Richmond, VA 23219, info@elections.gov; 800-552-9745.

6. Defendant State, Commonwealth of Virginia, is and was, at all times relevant herein, a political subdivision of the United States of America.


## JURISDICTION AND VENUE

6The Court has jurisdiction over this action pursuant to 28 U.S. Code Section 1331 - Federal question and 28 U.S. Code Section 1343(3) "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

2

This case seeks remedy under 42 U.S. Code Section 1983 and FRCP 65.  This court may issue a temporary restraining order and preliminary injunction pursuant to FRCP 65(b). Venue is proper over each claim and each defendant pursuant to 28 U.S. Code Section 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this district.

## I.  ISSUES:

A. Did John Findlay, Executive Director of the Republican Party of Virginia in his official capacity, while acting under color of law as an agent of the Virginia Board of Elections during the pre-certification process of political candidates violate the Voting Rights Act, Section 10101 (b) & 1st Amendment to the U.S. Constitution when he refused to conduct a ballot access pre-check in a timely manner and threatened to not conduct a pre-check of the campaign if the campaign did not agree to his delay of the pre-check?

B.  Did John Findlay, Executive Director of the Republican Party of Virginia in his official capacity, while acting under color of law as an agent of the Virginia Board of Elections during the pre-certification process of political candidates violate the 14th Amendment to the U.S. Constitution Equal Protection Clause when he conducted the ballot access pre-check of the Ivan Raiklin for US Senate Campaign in a uniquely dissimilar manner to the other four U.S. Senate Campaigns that filed their petitions?

C.  Did the Virginia Department of Elections violate the U.S. Constitution's 14th Amendment Equal Protection and Due Process Clauses when it refused to hear plaintiffs' appeal of the

Executive Director of the Republican Party of Virginia's decision to disqualify Ivan Raiklin as a

candidate for U.S. Senate Campaign due to petition signature insufficiency?


D.  Does Virginia Administrative Code 1VAC20-50-20 section C. 5 and section E. 3 requiring a

petition signature be from the same precinct as that listed in the Virginia Registered Voter

System database--from the same Congressional District--violate the 1st and 14th Amendments

to the U.S. Constitution?


## II.  LAWS PERTINENT TO CASE:

### VOTING RIGHTS ACT

*U.S. Code: Title 52 - VOTING AND ELECTIONS,* Subtitle I - Voting Rights
52 U.S. Code § 10101 - Voting rights

> (a) Race, color, or previous condition not to affect right to vote; uniform standards for
> voting qualifications; errors or omissions from papers; literacy tests; agreements
> between Attorney General and State or local authorities; definitions

>> **(2)**No person acting under color of law shall—
>> **(B) deny the right of any individual to vote in any election because of
>> an error or omission on any record or paper relating to any
>> application, registration, or other act requisite to voting, if such error
>> or omission is not material in determining whether such individual is
>> qualified under State law to vote in such election; or**

> (b) Intimidation, threats, or coercion
> **No person, whether acting under color of law or otherwise, shall intimidate,
> threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for
> the purpose of interfering with the right of such other person to vote or to vote as
> he may choose, or of causing such other person to vote for, or not to vote fo**r, any
> candidate for the office of President, Vice President, presidential elector, **Member of the
> Senate,** or Member of the House of Representatives, Delegates or Commissioners from
> the Territories or possessions, **at any** general, special, or **primary election held solely
> or in part for the purpose of selecting or electing any such candidate.** (Executive
> Director of RPV did so under color of Law)

> (c) **Preventive relief; injunction**; rebuttable literacy presumption; liability of United
> States for costs; State as party defendant

4

**Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b), the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order.** If in any such proceeding literacy is a relevant fact there shall be a rebuttable presumption that any person who has not been adjudged an incompetent and who has completed the sixth grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico where instruction is carried on predominantly in the English language, possesses sufficient literacy, comprehension, and intelligence to vote in any election. In any proceeding hereunder the United States shall be liable for costs the same as a private person. Whenever, in a proceeding instituted under this subsection **any official of a State or subdivision thereof is alleged to have committed any act or practice constituting a deprivation of any right or privilege secured by subsection (a), the act or practice shall also be deemed that of the State and the State may be joined as a party defendant and, if, prior to the institution of such proceeding, such official has resigned or has been relieved of his office and no successor has assumed such office, the proceeding may be instituted against the State.**

Chapter 103 - ENFORCEMENT OF VOTING RIGHTS

(c) Definitions
**(1) The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary**, special, or general **election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.**

U.S. CONSTITUTION:

1st Amendment: **"Congress shall make no law [...] abridging the freedom to petition the Government for a redress of grievances."**

5th Amendment: **"No person shall [...] be deprived of life, liberty, or property, without due process of law."**

14th Amendment: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

5

15th Amendment:  "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

19th Amendment:  The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex.

VIRGINIA ADMINISTRATIVE CODE

1VAC20-50-20. Material Omissions from Candidate Petitions and Petition Signature Qualifications

> C. The following omissions related to individual petition signatures are always material and any petition signature containing such omission shall be rendered invalid if:

> > 5. **The signer provided an address that does not match the petition signer's address in the Virginia voter registration system, unless the signer provided an address that is within the same precinct where a voter is currently registered in the Virginia voter registration system**, and the signer can be reasonably identified as the same registered voter.

> E. A signature upon a petition shall be included in the count toward meeting the petition signature requirements only if:
> > 1. The petition signer is a qualified voter who is maintained on the Virginia voter registration system either (i) with active status or (ii) with inactive status and qualified to vote for the office for which the petition was circulated;
> > 2. The signer provides his name; and
> > 3. The **signer provides an address that matches the petition signer's address in the Virginia voter registration system, or the signer provided an address that is within the same precinct where a voter is currently registered in the Virginia voter registration system**, and the signer can be reasonably identified as the same registered voter.

### III.  FACTS:

-**March 26, 2018** in the evening Ivan Raiklin spoke with Dino Ponce the Republican

Party of Virginia (RPV) Political Director to schedule a pre-check on Wednesday morning March

28 at 10:30am.  Phone calls were made between Ivan Raiklin and the RPV throughout the day

to find out a good day and time to schedule the pre-check.  The entire time, John Findlay,

Executive Director of the RPV, provided significant push back claiming that other candidates

were slotted to do a pre-check on Tuesday March 27 and Wednesday March 28.  These other

two candidates were not able to achieve the 10,000 signature threshold to even conduct a

pre-check.  Meanwhile, the Ivan Raiklin for U.S. Senate Campaign informed the RPV Executive

Director that they would have well over 11,000.  The RPV Director mentioned that 12,500 was

needed to initiate a pre-check.  So the Campaign focused all efforts and during all of Monday

March 26, Tuesday March 27, and the morning of Wednesday March 28 attained the minimum

12,500 needed to conduct a pre-check.

Mar 26 9:55 AM 804.828.0636 Henrico, VA Richmond, VA 2— Findlay (Number depicts

phone number and number of minutes the call lasted)

Mar 26 9:57 AM 804.828.1111 Henrico, VA Richmond, VA 9—Findlay/RPV coordinated to do

pre-check on Wednesday

Mar 26 10:37 AM 804.828.9502 Richmond, VA Richmond, VA 7—RPV

-**March 28**

Two phone calls were made to the RPV Political Director to inform him that some signatures

were still being notarized and we would only be at the RPV headquarters at 11:30am:

Mar 28 10:19 AM 804.397.4771 Richmond, VA Richmond, VA 8—We would not be

getting to RPV until closer to 11:30 as we were still getting the last few signatures notarized

Mar 28 11:00 AM 804.397.4771 Richmond, VA Richmond, VA 4—Update of our status as Jacob

Carasella and Nicholas Hoskins were showing up to do pre-check at this time.

At 11:30am the Republican Party of Virginia (RPV), under the supervision of Executive

Director John Findlay at 115 E. Grace Street, Richmond VA 23219 initiated a pre-check of the

12,691 petition signatures submitted by the Ivan Raiklin for US Senate campaign to be certified

for inclusion as a U.S. Senate candidate on the June 12, 2018 Republican primary ballot. Va.

Code §§ 24.2-506 requires a minimum of 10,000 total signatures of registered voters from

7

Virginia and a minimum of 400 signatures from each of the 11 congressional districts to favorably certify as a U.S. Senate candidate in Virginia. The campaign submitted a minimum of over 600 signatures from each of the congressional districts pursuant to Va. Code §§ 24.2-506, the Virginia Department of Elections US Senate Candidate Bulletin and the RPV Statewide Ballot Access Guidance. At ~16:15 the Executive Director, John Findlay, after two congressional districts were checked and cleared, stated he was not comfortable with how the check was going and demanded the campaign (using expletives) return the following day, March 29, the last day the signatures were due to the Virginia Department of Elections. Raiklin attempted to influence the RPV Chairman via phone call/text to step in and overrule this decision, however, was unsuccessful. This decision denied the Raiklin campaign any ability to recover from any petition signature deficiencies as time was fleeting to deploy any people to collect more signatures should the need arise. 24 hours of recovery time turned into none with this decision to delay.

Here are the phone calls made that day and the summary of conversations had along with the # of minutes each call took:

PHONE CALL: Mar 28 4:18 PM 703.477.8476 Richmond, VA VM Deposit, CL 1 -- -- -- Call to Chairman of the Republican Party of Virginia, did not answer call.

TEXT MESSAGES:

     4:19pm Raiklin: "Need to talk ASAP!" We just got thrown out during the count/pre-check."

     4:20pm Chairman RPV: "I can't pick up" "Who threw u out?"

8

4:20pm Raiklin: "Findlay, saying that he wants to do it tomorrow."

4:22pm Raiklin:  "Everything was going smooth with Dino, we cleared 2 districts and in the middle of counting two other districts, the database started "going slow". Findlay said I don't like how this is going  and said to come back in tomorrow at 9 am."

4:24pm Chairman RPV: "Lemme step our [sic] and call him"


PHONE CALL:

Mar 28 4:40 PM 703.477.8476 Richmond, VA VM Deposit, CL 1 -- -- ——Chairman of the RPV did not answer.


TEXT MESSAGES:

4:47 pm Raiklin: "Please call me, I am not comfortable with waiting until tomorrow for pre-check…I sense there is something more. Particularly the way he interacted with my staff without my presence.  Disrespectful with expletives."

4:52 Chairman RPV: "He says your staff refused to say if he was recording him"

4:53 Chairman RPV: "And he warned him four times to stop interrupting him"

4:54 Raiklin: "My staff tell me definitively they were not recording.

4:59 Raiklin: "First question my CM asked was why are we interrupting the count and second question was can we get Ivan to be here to hear this for transparency … Dino's non verbal queues exuded something way more than just a procedural issue.  Please call, much more complicated than text."

Ivan Raiklin was unsuccessful in convincing the Chairman of the Republican Party to have John Findlay change his mind about completing the pre-check on March 28.


9

-**On March 29** at 0900am, the campaign returned to conduct the pre-check certification at 115 E. Grace Street, Richmond, VA 23219.  Per the RPV Statewide Ballot Access Guidance, the RPV proceeded to count the signatures and then check each congressional district with the 9th congressional district being the last one checked (the 9th is the farthest district geographically from Richmond).  At approximately 1500 the Campaign completed the pre-check of the ten out of the eleven congressional districts with the 9th still to be counted, but with the need to submit the petitions to the Department of Elections by the 1700 filing deadline.  After the Raiklin campaign submitted the petition and filing documents to the DoE timely, the RPV Political Director obtained those petitions to continue the check of the 9th Congressional district in what now became the post check.  The RPV disqualified a sufficient number of signatures from the 9th Congressional District using an incorrect database with faulty data (GOP Data Center) rather than the statutory required Virginia Voter Registration System published by the Department of Elections and further concluded that the Raiklin campaign fell short of the required 400 signatures to certify as a US Senate candidate in the Republican primary on June 12, 2018.  Present were Nicholas Hoskins (Raiklin Campaign Manager), Jacob Carasella (Raiklin Political Director), Ivan Raiklin (US Senate Candidate), John Findlay (RPV Executive Director), Phil Fickes (Raiklin Field Director) John March (RPV Communications Director), Dino Ponce (RPV Political Director). (1st, 14th Amendments U.S. Constitution).

After disqualification was complete, the first person to call me was the Chairman of the Republican Party of Virginia with the following:

Mar 29 9:14 PM 703.477.8476 Richmond, VA Incoming, CL 14 -depending on how you take this will determine your political future, and also urged Raiklin that his next call after hanging up with the Chairman of the RPV should be to one of the other U.S. Senate Candidates.

-**On April 4**, the Raiklin campaign filed an appeal of petition signature insufficiency with the Department of Elections pursuant to 1VAC20-50-30 within the required 5 days.

-**On April 5**, the Department of Elections (DoE) responded via email and postal service with a refusal to hear an appeal. The DoE stated that the appeal process was only afforded to independent candidates and did not apply to party nominees. In its response, the Department of Elections wrote, "Virginia law does not allow candidates for nomination by a party primary to appeal this type of determination to the State Board of Elections. Sections 24.2-506 and 24.2-543 of the Code of Virginia and 1VAC20-50-30 [...] establish petition requirements and appellate procedures for independent candidates, which do not apply to candidates for nomination by a political party. Instead, petition requirements for candidates for nomination by a non-presidential primary are established by Va. Code Section 24.2-521. Section 24.2-521 does not provide an avenue by which candidates for nomination by a primary can appeal a political party's determination that they have failed to submit sufficient petition signatures. As the laws and regulation you reference do not apply to individuals who are seeking their political party's nomination in a primary election, and Virginia law does not authorize an appeal for candidates for party nomination, thus you are not eligible for an appeal hearing pursuant to Section 24.2-506, and a hearing will not be scheduled."

-**On April 6**, the RPV afforded the Raiklin campaign the ability to conduct a partial recount using the Montgomery County Voter Registration List from the Virginia Voter Registration System, rather than the entire 9th Congressional District Voter Registration List. The partial recount identified 62 incorrectly disqualified signatures before it was stopped.

-**On April 20**, after some push back from the Executive Director of the RPV, the Raiklin campaign finally obtained copies of all of the 9th congressional district petition signatures that

the RPV checked to do a full audit against the Virginia Voter Registration System from the 9th congressional district.

      **-April 23**, Ivan Raiklin for US Senate Campaign mailed a money order in the sum of $923 to the Virginia Department of Elections with an invoice to purchase the 9th Congressional District Database.

      **-April 24,** At 9:22 EST the US Postal Service delivered the Money Order to the Board of elections, see:  Tracking #:  9505514846438114210005

      Without access to the 9th Congressional District Virginia Voter Registration System, the Raiklin campaign has identified 415 signatures of Virginia registered voters from the 9th Congressional District between the initial partial recount using the Montgomery County Virginia Voter Registration System data and the GOP Data Center data.  This includes at least 309 of these signatures certified by the RPV and another minimum of 106 petitioners that were disqualified by 1VAC20-50-20 section C. 5 and section E. 3.

      **-April 25**:  Ivan Raiklin contacted the Virginia Department of Elections to confirm the Money Order for $923 had arrived with the 3 page invoice,  the call was placed with Andrea T. Walker, Administrative & Office Specialist, Department of Elections at 1100 Bank Street, Richmond, Virginia 23219, email:  andrea.walker@elections.virginia.gov to the phone number 804 864-8902, alternate number is 804 552-9745.  Andrea explained that the package did not arrive, which did not match with the information from the USPS' website using the tracking number:  9505514846438114210005. Receipts attached.

      **-April 27**-The Campaign confirmed through the United States Postal Service that the package had in fact arrived at the Department of Elections on Tuesday morning.  HOwever, after further inquiry, the Virginia Department of Elections at 2:40pm stated that because Ivan Raiklin was "no longer a candidate", the Department of Elections would not provide the 9th

Congressional District Virginia Voter Registration System List to the campaign and the only way

that Ivan Raiklin could obtain the database was to file his candidacy as an independent

candidate, triggering another filing fee of candidacy. Raiklin refused to disown the Republican

Party and thus was not able to obtain the 9th Congressional District Virginia Voter Registration

System List to conduct a proper analysis of the petition signatures from the 9th Congressional

District.


## IV. ANALYSIS:

### ISSUE 1: FINDLAY/RPV VOTING RIGHTS ACT VIOLATION:

Did John Findlay, Executive Director of the Republican Party of Virginia in his official

capacity, while acting as an agent of the Virginia Department of Elections during the

pre-certification process of political candidates violate the Voting Rights Act, Section 10101 (b) &

1st Amendment to the U.S. Constitution when he refused to conduct a ballot access pre-check

in a timely manner and threatened to not conduct a pre-check of the campaign if the campaign

did not agree to his unconstitutional delay of the pre-check?

> The Voting Rights Act in Title 52 USC Section 10101 paragraph (b) titled "Intimidation,
> threats, or coercion" clearly states that, **"No person, whether acting under color of law
> or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten,
> or coerce any other person for the purpose of interfering with the right of such
> other person to vote or to vote as he may choose, or of causing such other person
> to vote for, or not to vote for, any candidate for the office of** President, Vice
> President, presidential elector, **Member of the Senate**, or Member of the House of
> Representatives, Delegates or Commissioners from the Territories or possessions, **at
> any** general, special, or **primary election held solely or in part for the purpose of
> selecting or electing any such candidate**.

Under Virginia law, the Republican Party of Virginia ("RPV") has a choice: if they wish to

have a closed, Republicans-only nomination process, they are free to call and hold a party

convention, and use a variety of party-funded, party-run processes to ensure that only members

13

of the political party participate in the selection process, give themselves greater control over

how that process, and nominate who they deem to be sufficiently "Republican." But if they want

the taxpayers of Virginia to fund and administer the primary election, then state law requires an

open primary, where "each registered voter of the Commonwealth shall be given an opportunity

to participate in the ... primary of the political party." Code of Virginia § 24.2-545. As the Fourth

Circuit has explained, "a party is free to select from various methods of nomination in which it

can exclude voters who do not share its views. . . . It is only when the party chooses to hold a

primary operated and funded by the state that it must allow all voters to participate." Miller v.

Brown, 503 F.3d 360, 368 (4th Cir. 2007) (emphasis added).

Virginia's political parties do not have to use taxpayer money and Virginia's electoral

machinery to select their nominees. But here, that is precisely what the RPV has chosen to do.

And with that choice, comes consequences, the most significant is that the party must allow all

voters to participate—not just Republicans, but Independents, Libertarians, Greens, Democrats

and the Tea Party. Given recent history, it is understandable why the party wishes to have its

cake and eat it too: a closed party convention (1) costs money, and must be paid for by the

party, and (2) tends to elect a candidate more conservative than that preferred by the more

establishment Republicans. An open primary, on the other hand, runs the risk (at least in the

eyes of some Republicans) that the winner will not be conservative enough. One answer to this

Goldilocks dilemma is to try to rig the system to produce a candidate that is "just right" in the

eyes of the Party's elders. Which is precisely what is at issue here: a Party self-created hybrid,

where they seek the political "benefits" of a Republican-only affair, yet paid for by the taxpayers

of Virginia. This they cannot do: once they made the choice to forego a convention and use the

taxpayer-funded open primary, the results must be placed in the hands of the voters—all the

voters, not just those that the party prefers. Since the RPV has chosen the primary method of

14

selecting candidates, it is now acting under the color of the SBE. For this reason, it is subject to the same scrutiny as a state entity would as it applies to voting: The Voting Rights Act, 1st Amendment, 14th Amendment to the U.S. Constitution. By opting for the primary method of nomination, the RPV has availed itself as an arm of the Commonwealth of Virginia.

John Findlay, acting in his official capacity as the Executive Director of the RPV, under color of law, Virginia Law (the organization charged with certifying Republican Candidates to appear on the primary ballot on behalf of the Virginia Department of Elections) in direct contravention of the Voting Rights act, attempted to and did intimidate, threaten, coerce the Raiklin campaign staff to have the effect of Ivan E. Raiklin not appearing on the primary ballot. John Findlay entered the room where the pre-check count was being conducted, looked paranoid and asked "what was going on?" He stated he didn't like the way the count was going, and that he would shut it down until the following morning at 9am. Raiklin for US Senate Campaign Manager, Nicholas Hoskins asked "why? Do you not like how this is going?" Raiklin for US Senate Political Director Jacob Carasella stated that "before Findlay continued, we need to have Ivan Raiklin come up to hear the reasons for calling off the count for transparency sake." Hoskins proceeded to initiate a phone call using speakerphone to Raiklin at approximately 1605. Findlay stated that "**if you interrupt me one more fucking time, I am going to stop this count and you won't even have a chance to do this pre-check and will have to go to the VBE directly without a check."** emphasis added. This is a clear indication of intimidating and threatening rhetoric towards the Ivan Raiklin for U.S. Senate campaign. Findlay stated that he thought he was being recorded, but in fact, Hoskins was dialing Raiklin (who was downstairs with children who were on their spring break) to get the candidate upstairs to where the count was being conducted in order for transparency of why the count was being curtailed. Four hours into the count, the Raiklin campaign was told to leave and return the following morning at

15

9:00am. Pushing the count to the following day denied the campaign any ability to recover from any issues that would be identified in such a count. The campaign purposefully wanted to have 24 hours time to recover from a signature pre-check issue. The Executive Director of the RPV's decision to not conduct a timely pre-check coupled with his words of intimidation ""**if you interrupt me one more fucking time, I am going to stop this count and you won't even have a chance to do this pre-check and will have to go to the VBE directly without a check.**" interfered and resulted in negating the expression of will of 12,691 petitioners. Moreover, this denial was the initial proximate cause of these voters' inability to vote should they have intended to vote for Ivan Raiklin in the primary.

Acting under color of law as the representative of the VBE, the actus reas by the RPV ED clearly shows a violation of the Voting Rights Act, Title 52 USC Section 10101 paragraph (b) in that the RPV ED acted under color of law attempted to and through his decision to move the pre-check to the next day to intimidate, threaten, and coerced, members of the Raiklin campaign and to have the effect of denying the ability to obtain sufficient signatures under the RPV's own methodology. This resulted in the interfering with the right of all petitioners to not have the ability to vote for a candidate they signed a petition for in the office of US Senate at the primary election held solely or in part for the purpose of selecting or electing any such candidate.

ISSUE 2:  FINDLAY/RPV 14TH AMENDMENT EQUAL PROTECTION CLAUSE VIOLATION

Did John Findlay, Executive Director of the Republican Party of Virginia in his official capacity, while acting as an agent of the Virginia Department of Elections during the pre-certification process of political candidates violate the 14th Amendment to the U.S. Constitution Equal Protection Clause when he conducted the ballot access pre-check of the Ivan

Raiklin for US Senate Campaign in a uniquely dissimilar manner to the other four U.S. Senate Campaigns that filed their petitions?

"[T]he power of the states to determine the manner of holding elections is limited by the Equal Protection Clause of the Fourteenth Amendment." *Socialist Workers Party v. Hechler*, 890 F.2d 1303, 1309 (4th Cir. 1989). And since the RPV opted for a primary rather than a convention, it further availed itself to the limitations of the 14th Amendment, acting as the arm of the VBE while determining petition signature sufficiency for ballot access.

The other three campaigns completed their pre-check process in the same day. One U.S. Senate campaign submitted on 12 March and completed the pre-check after several hours the same day. Another U.S. Senate campaign bypassed the RPV and submitted their signatures to the VBE afterwards. A third campaign submitted their signatures on 26 March and were certified in several hours the same day.

The RPV in its pre-and post certification of candidacy for the Ivan Raiklin for U.S. Senate campaign used the GOP Data Center database to determine the validity of qualified registered voters in Virginia. However, Virginia law requires that the Department of Elections Virginia Voter Registration System be used when conducting certification. (1VAC20-50-20)

By opting to conduct a primary, triggering taxpayer dollars, the RPV became an agent or deputy of the State's Board of Elections making it subject to the same constitutional restrictions as the State itself as it applies to the 14th Amendment. Plaintiff requests a preliminary injunction hearing with the trial of the action on the merits.

The RPV failed to follow a uniform procedure from candidate to candidate in the ballot access validation process, using an incorrect database (GOP Data Center) and forcing plaintiff to return another day to conduct the validation process, having the effect of denying ballot access for lack of time to recover from invalid signature collection. The RPV ED not only

17

manifestly abused his discretion in the manner in which he determined the invalidity of the
signatures by using an incorrect database, but also did so acting under color of law acting as an
arm of the VBE and thus the RPV violated the Plaintiff's 14th amendment equal protection
clause rights.

## ISSUE 3.  DEPARTMENT/BOARD OF ELECTIONS 14th AMENDMENT DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

Did the Virginia Board of Elections and Christopher E. Piper, Commissioner of the
Virginia Board of Elections in his official capacity violate the U.S. Constitution's 14th Amendment
Equal Protection and Due Process Clauses when they refused to hear plaintiffs' appeal of the
Executive Director of the Republican Party of Virginia's decision to disqualify Ivan Raiklin as a
candidate for U.S. Senate Campaign due to petition signature insufficiency?

On April 4, the Raiklin campaign filed an appeal of petition signature insufficiency with
the Board of Elections pursuant to 1VAC20-50-30 within the required 5 days.

On April 5, the Board of Elections (BoE) responded via email and postal service to
Raiklin with a refusal to hear an appeal.  The BoE stated that the appeal process was only
afforded to independent candidates and did not apply to party nominees.  In its response, the
Board of Elections wrote, "Virginia law does not allow candidates for nomination by a party
primary to appeal this type of determination to the State Board of Elections.  Sections 24.2-506
and 24.2-543 of the Code of Virginia and 1VAC20-50-30 [...] establish petition requirements and
appellate procedures for independent candidates, which do not apply to candidates for
nomination by a political party.  Instead, petition requirements for candidates for nomination by a
non-presidential primary are established by Va. Code Section 24.2-521.  Section 24.2-521 does
not provide an avenue by which candidates for nomination by a primary can appeal a political

18

party's determination that they have failed to submit sufficient petition signatures.  As the laws and regulation you reference do not apply to individuals who are seeking their political party's nomination in a primary election, and Virginia law does not authorize an appeal for candidates for party nomination, thus you are not eligible for an appeal hearing pursuant to Section 24.2-506, and a hearing will not be scheduled."

This memo by the VBE put all Virginians on notice that a petitioner that signs a petition for an *independent* candidate is afforded an appeal by the VBE, however, that same petitioner is not afforded the ability to appeal should they sign a petition for a Republican Party Candidate seeking a place on the ballot for the Republican Party primary.  "The chilling effect that such a practice has on associational and voting rights is obvious."  *Socialist Workers Party*, 890 F.2d at 1309 (quoting *Anderson v. Mills*, 664 F.2d 600, 609 (6th Cir. 1981)).  Those citizens (qualified registered voters of Virginia) who support putting a Republican candidate on the ballot—and only those citizens--must understand that, should the Executive Director of the Party decide to exclude their signature, they have no recourse whatsoever.  Knowing that their petition signature may or may not even count at a whim uniquely deters citizens from participating in the Republican primary and casts doubt to sign a petition to place a party candidate on the primary ballot.  Because the RPV opted to conduct a primary election administered by the state and funded by Virginia taxpayers, with state law requiring an open primary, where "each registered voter of the Commonwealth shall be given an opportunity to participate in the ... primary of the political party"  Code of Virginia § 24.2-545, the 14th Amendment's due process clause was clearly violated by not allowing an appeal.

As the Fourth Circuit has explained, "a party is free to select from various methods of nomination in which it can exclude voters who do not share its views. . . .  It is only when the party chooses to hold a primary operated and funded by the state that it must allow all voters to

19

participate." Miller v. Brown, 503 F.3d 360, 368 (4th Cir. 2007) Thus, by choosing a primary, the RPV availed itself to the due process clause of the 14th Amendment.

If we accept the assertion by the VBE that the Party is the decision to place a candidate on a ballot for a primary rests solely with the party, then we accept that the judge, jury and executioner in deciding primary candidates rests with one or two Virginians, with no external oversite or ability to appeal this decision. The memo thus denies plaintiff and the 12,690 other petitioners no mechanism for appealing an honest mistake or a whimsical disqualification made by the RPV. Allowing an agent of the State (RPV) to make arbitrary and capricious decisions on who gets on the ballot for the U.S. Senate primary without a mechanism for an appeal is unconscionable.

## ISSUE 4. VIRGINIA'S 1ST AND 14TH AMENDMENT EQUAL PROTECTION CLAUSE VIOLATIONS

Virginia Administrative Code 1VAC20-50-20 section C. 5 and section E. 3 requires a petition signature address be from the same precinct as that listed in the Virginia Voter Registration System--even though the signature is from a qualified Virginia voter and from the same Congressional District. This denial of the basic right to vote violates the 1st and 14th Amendments to the U.S. Constitution.

The registered voters of Virginia supporting Ivan Raiklin for U.S. Senate--who signed his nomination petition, to include Raiklin himself--possess two clearly established and independently protectable rights under the first amendment:

20

The first, is "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion", "to cast their votes effectively" for the candidate of their choice", "rank among our most precious freedoms". Williams v. Rhodes, 393 U.S. 23, 30 (1968). Illinois State Board of Elections v. Socialist Workers Party, supra, at 184. "No right is more precious in a free country than that of having a voice in the election of those who serve the public." Wesberry v. Sanders, 376 U.S. 1, 17 (1964) The "Right to vote is 'heavily burdened' if that vote may be cast only for one of two candidates...at a time when other candidates are clamoring for a place on the ballot." Lubin v. Parrish, 415 U.S. 709, 716 (1974).

Furthermore, "the right of an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters ...." Id.; see Illinois State Board of Elections v. Socialist Workers Party, supra, at 184. Access to the ballot is thus not only a protected right in itself, but represents an integral element in the effective implementation and exercise of the rights of political association and of voters.

The infringement of these rights becomes magnified due to the peculiar nature of the Virginia US Senate Republican primary. Ordinarily in an election, a voter has the opportunity to write in the name of the candidate of his choice should such candidate not appear on the ballot. In party primaries for US Senate in Virginia, however, this opportunity does not exist (Virginia Code § 24.2-644. Voting by paper ballot; voting for presidential electors; write-in votes. C. *At all elections except primary elections* it shall be lawful for any voter to vote for any person other than the listed candidates for the office by writing or hand printing the person's name on the official ballot. (emphasis added)

In *Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979)* the US Supreme court expressed that restrictions on access to ballot implicate the right to vote.

21

When such fundamental rights as the freedom to associate as a political party and the right to cast votes effectively are at stake, a State must establish that its regulation of ballot access is necessary to serve a compelling interest. Pp. 440 U. S. 184-185. "[E]ven when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty," *Kusper v. Pontikes,* 414 U. S. 51, 414 U. S. 58-59, and States must adopt the least drastic means to achieve their ends. This requirement is particularly important where restrictions on access to the ballot are involved. Pp. 440 U. S. 186-187.

In *Anderson v Poythress NO. C80-1671A Civil Action (26SEP1980)* Although states have significant power to regulate the electoral process, "The power cannot be exercised in such a manner as to violate other specific provisions of the Constitution" (page 9, (50)) "A fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," Armstrong v. Fanzo, 380 U.S. 545, 552 (1965) (emphasis added). This opportunity must be "appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers, Local 473 v. McElroy, 367 U.S. 886, 895 (1961). p. 9, (50).

In Anderson v. Celebrezze 460 U.S. 780 (1983) The Court demanded a three part test to determine the 1st Amendment Constitutionality of State Ballot Access Laws.  First, a court must consider the weight of the injury to the plaintiff's fundamental rights.  Second, a court must identify the legitimate state interests. Finally, a court must determine the extent to which the legitimate state interests must impose burdens on the fundamental rights.

1. <u>Weight of the injury to the plaintiff's fundamental right</u>-The right to vote is one of the most important and fundamental rights that a citizen has in the United States.  It is the basis for shaping our government and political system by choosing the individuals that govern and represent the people.  Denying qualified registered voters from the correct congressional district from signing a petition for a US Senate candidate has no place in our democracy.

2. <u>A court must identify the legitimate state interests</u>-The state's interest in this instance, is one of **administrative convenience** of ensuring voters voted at the correct precinct from which they are registered, however, to deny these voters the ability to sign a petition due to a change of address such as a student moving from one part of Blacksburg, VA to another for the next semester, is not legitimate.  This administrative convenience infringes on a voter's ability to vote for the candidate of their choosing by denying that candidate from even appearing on the ballot.  Denying the right to vote based on a precinct mismatch for administrative convenience maintains a watchful eye on a registered voter, it however, is not narrowly drawn and the state interest is not compelling to deny that fundamental right to vote.

3. <u>A court must determine the extent to which the legitimate state interests must impose burdens on the fundamental rights</u>-When the VBE and the RPV acting as its agent invalidates signatures from the proper congressional district, but not in the same precinct, the VBE violates the voting rights of these petitioners.  The denial of at least 97 signatures from the 9th Congressional district had the effect of invalidating the remaining over 12,500 petition signatures that intended to have the opportunity see and possibly vote for Ivan Raiklin in the U.S. Republican Party primary election.

Unlike in *Anderson V. Poythress*, Raiklin's signatures were invalidated not because of illegibility or non registration, but due to a precinct mismatch, something written into the Virginia code for administrative convenience to more easily keep track of registered voters, but not to outright deny them their right to vote. This section of the code, then constitutionally denied over 106 petitioners the right to vote which by extension denied the remaining over 12,500 petitioners to see a candidate of their choosing on the ballot. This 106 figure was determined based off of the GOP Data Center data due to the fact that as of Friday 4/27/2018, the VBE had refused to release the Plaintiff the 9th Congressional District Virginia Voter Registration System List, as they claimed that Ivan Raiklin was not a candidate and thus did not fall into the category of individuals or entities that are authorized to purchase data/lists from the Virginia Voter Registration System. Denying the right to vote in favor of administrative convenience cannot delete well rooted constitutional and federal rights of suffrage and voting. Disqualifying petition signatures under 1VAC 20-50-20 C5 and E3 is not the least restrictive means of promoting a state interest. The state's interest of limiting the number of candidates that appear on the ballot to those that are serious and have a modicum of support throughout the state is acknowledged. And it does so, by requiring a statewide candidate to obtain a minimum of 10,000 signatures from registered Virginia voters coupled with a minimum of 400 signatures of registered Virginia voters from each of the 11 congressional districts. This campaign met that petition signature threshold.

"A State may limit ... access to the ballot only to the extent that a sufficiently weighty state interest justifies the restriction. Any severe restriction must be narrowly drawn to advance a state interest of compelling importance. See id., at 184, 186. Pp. 288-289. Administrative convenience does not justify denying a qualified registered voter the right to sign a petition that places a candidate on the ballot in a primary election. As in Norman v. Reed 502 U.S. 279

24

(1992) where the Court used strict scrutiny, this statute is overly burdensome on the fundamental right to vote and thus violative of the First and Fourteenth Amendment right to the freedom of association.

"[T]he power of the states to determine the manner of holding elections is limited by the Equal Protection Clause of the Fourteenth Amendment." *Socialist Workers Party v. Hechler*, 890 F.2d 1303, 1309 (4th Cir. 1989). Disqualifying valid 9th Congressional District registered Voters violates that Clause in two ways.

*First*, this requirement will disenfranchise voters who wish to vote for a candidate for U.S. Senate but who will not be able to, as their status as a rigistered voter is not qualified for a petition signature, but qualified to cast a vote in the primary with no change in registration status.

*Second*, to penalize a registered voter in Virginia from the correct district for not placing an address from the same precinct as they registered in the Virginia Voter Registration System is a constitutionally unacceptable price for participating in democracy, particularly when state law (1) allows the party to have a Republican-only nominating convention, where this requirement is not placed, and absent that, requires (2) a taxpayer-funded open primary that, in the words of the Fourth Circuit, "must allow all voters to participate." *Miller*, 503 F.3d at 368.

1VAC20-50-20 allows for a discrepancy in the petitioners signed address as compared with the one in the Virginia Voter Registration System, however, it does not count the very same Virginia Registered Voter towards the petition count if the address is from a different precinct.

Thus, a college student who registered to vote at their address last semester a few blocks away, and wrote their current address on the petition form that is located in a different precinct is disqualified, while his roommate who lived a few blocks away in the other direction has their petition count because it was located in the same precinct. This requirement of

25

administrative convenience has a chilling effect of disqualifying those that legitimately have the right to vote, to not do so, amidst a time in our political conversation where many are suspect at how many unqualified or illegal votes are casts.

Against all this, there is no state interest that is compelling enough to justify turning away qualified registered voters from the correct district to be considered qualified in a petition signature count.  Denying these petitioners the ability to vote for the candidate of their chosing and their ability to appeal the decision of the RPV "serves no purpose whatever, except to have a chilling effect on the voter." *Socialist Workers Party*, 890 F.2d at 1309.  Just as the RPV or the State Board could not adopt a rule that served to exclude African American voters from participating in its primary, as the Democratic Party attempted in Texas, *Smith v. Allwright*, 321 U. S. 649 (1944), or create a pre-primary by another name that is intended to exclude minority voters, once again as the Democratic Party attempted in a Texas County in *Terry v. Adams*, 345 U. S. 461 (1953), when a party adopts a policy in a state-funded, state-administered election that has the sole purpose of deterring registered voters from exercising their constitutional right to vote, it causes "a violation of the potential [voters'] First and Fourteenth Amendment rights." *Socialist Workers Party*, 890 F.2d at 1309.

The First Amendment forbids denying a citizen's right to vote in the state-funded, state-administered election for the Republican primary. "[W]hen the party chooses to hold a primary operated and funded by the state … it **must allow all voters to participate**." *Miller*, 503 F.3d at 368 (emphasis added).  Requiring a precinct match for administrative convenience, is far more invasive and burdensome on First Amendment freedoms than merely requiring voter registration as a condition of participating in a party primary.  The VBE and by extension, the RPV cannot circumvent that requirement by invalidating otherwise valid petition signatures from qualified Virginia registered voters from being counted towards the required 400 signatures

necessary for a congressional district to be considered sufficient to place a candidate on the ballot. Not counting these signatures denies these petitioners' right to vote and thus violates plaintiff's 1st and 14th Amendments.

## V. REMEDY: PRELIMINARY INJUNCTION

The purpose of a temporary injunction is to preserve the status quo and prevent irreparable injury pending resolution of the merits of the case. The four factors for a preliminary injunction clearly weigh in Plaintiffs' favor. The Fourth Circuit follows the familiar four factor test for granting a preliminary injunction: "1) Has the petitioner made a strong showing that it is likely to prevail upon the merits? 2) Has the petitioner shown that without such relief it will suffer irreparable injury? 3) Would the issuance of the injunction substantially harm other interested parties? 4) Wherein lies the public interest?" *Blackwelder Furniture Company of Statesville v. Seilig Manufacturing Company*, 550 F.2d 189, 193 (4th Cir. 1999).

### PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS

The "right to vote freely for the candidate of one's choice is the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds*, 377 U.S. at 555. "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). At stake here are Virginians' right to vote and plaintiffs have strong arguments that this right was unlawfully denied under the Voting Rights Act, the First and Fourteenth Amendments to the U.S. Constitution.

*First*, plaintiffs will suffer irreparable harm absent an injunction. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).

27

And when "constitutional rights are threatened or impaired, irreparable injury is presumed."

*Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).  As has already been shown, a

requirement for a precinct match amounts to an unlawful restriction on the right to vote.  Since a

"restriction on the fundamental right to vote . . . constitutes irreparable injury," *ibid.*, this factor

weighs heavily in favor of granting the injunction.  *See also Williams v. Salerno*, 792 F.2d 323,

326 (2d Cir.1986) (finding that the denial of the right to vote is "irreparable harm").

  *Second*, no interested party will suffer harm from an injunction.  The SBE will no doubt

argue that it is merely effectuating the will of the RPV, who in turn will argue it properly used an

incorrect database with no malice intended.  If the party did not want to avail itself to the voter

protections emanating from 1st and 14th amendments, it should have opted to run its own

primary or convention, not one funded by the taxpayers of the Commonwealth of Virginia.  By

asking the state to fund and run the primary, the party became an arm of the SBE and the SBE

required to afford the same rights of due process to petitioners for partisan candidates and gave

up its ability to restrict participation.  Thus, the state "must allow all voters to participate."  *Miller*,

503 F.3d at 368.

  *Third*, the public interest is in plaintiff's favor.  States surely have "a strong interest in

their ability to enforce state election law requirements."  *Hunter v. Hamilton Cnty. Bd. of*

*Elections*, 635 F.3d 219, 244 (6th Cir. 2011).  But they have no interest in enforcing an

unconstitutional rule.  Moreover, the public has a "strong interest in exercising the 'fundamental

political right' to vote."  *Purcell v. Gonzalez*, 549 U.S. 1, 4, (2006) (quoting *Dunn v. Blumstein*,

405 U.S. 330, 336 (1972)).  "That interest is best served by favoring enfranchisement and

ensuring that qualified voters' exercise of their right to vote is successful."  *Hunter*, 635 F.3d at

244.

The public has an interest in free and fair elections, the United States prides itself in being the beacon of global democracy.  Enjoining serves the public interest in two ways.  It will allow voters to vote for whom they wish and will afford the 14th Amendment's due process right to Plaintiff and petitioners.

## VI.  CONCLUSION

For all the above reasons, disqualifying qualified registered Virginia voters from the 9th congressional district due to a precinct mismatch is illegal on at least four different bases and should be enjoined.  But not only are the Defendants' attempt to deny the fundamental right to vote of many petitioners/voters illegal, it is also un-Virginian.  As James Madison—one of the greatest Virginians to ever live—wrote: "Who are to be the electors of the Federal Representatives?  Not the rich more than the poor; not the learned more than the ignorant; not the haughty heirs of distinguished names, more than the humble sons of obscure and unpropitious fortune.  The electors are to be the great body of the people of the United States."  The Federalist, No. 57 (Cooke ed. 1961), at 385.  And it all starts with placing a candidates name on the primary ballot in today's two party system.  James Madison was correct.  This Court should thus grant Plaintiff's motion and enter an order restraining the SBE from printing ballots and sending absentee ballots without the candidate's name, Ivan E. Raiklin, as one of the candidates seeking the Republican primary U.S. Senate nomination for 2018, until a final judgment is entered in this case.

Ivan   Raiklin

Ivan Rili

4/30/2018

29

**Each document filed with the court by a *pro se* litigant shall bear the following certification:**

## CERTIFICATION

I declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document.

_Ivan Raiklin_
Name of *Pro Se* Party (Print or Type)

_Ivan Rlhi_
Signature of *Pro Se* Party

Executed on: _4/29/2018_ (Date)

**OR**

(2)  _____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)

Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

43