IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IVAN E. RAIKLIN,                              )
                                             )
              Plaintiff,                      )
                                             )
v.                                           )          Civil Action No. 3:18-cv-00288
                                             )
VIRGINIA DEPARTMENT/BOARD                    )
OF ELECTIONS, et al.,                        )
                                             )
              Defendants.                     )

**MEMORANDUM IN SUPPORT OF STATE
DEFENDANTS' MOTION TO DISMISS**

Defendants the Commonwealth of Virginia, Christopher E. Piper, in his official capacity

as the Commissioner of the Virginia Department of Elections, the Virginia Department of

Elections,[1] and the Virginia State Board of Elections (collectively, the State Defendants), by

counsel, state as follows in support of the State Defendants' Motion to Dismiss.

---

[1] The Plaintiff names the "Virginia Department/Board of Elections" as defendants in this matter. Plaintiff uses "Virginia Department of Elections ("DOE") and VBE [] interchangeably in [the Plaintiff's Complaint and attached] brief, [and] additionally, Department of Elections and Virginia Board of Elections are used interchangeably in [Plaintiff's] brief." *See* Pl.'s Compl., Dkt. No. 1, p. 14, ¶ 4. The Virginia Department of Elections and the Virginia State Board of Elections are statutorily distinct entities established by Virginia law. *See* Va. Code §§ 24.2-102, 24.2-103. As the Plaintiff has failed to properly serve either the Virginia Department of Elections or the Virginia State Board of Elections, instead serving only the Commissioner of Elections, the Plaintiff's claims against the Department and State Board are not properly before the Court at this time.

However, to the extent that the Court considers the Plaintiff's claims against the "Virginia Department/Board of Elections," the arguments contained in the following memorandum are also advanced on behalf of the Virginia Department of Elections and the Virginia State Board of Elections. The State Defendants take the same position with respect to the Attorney General of Virginia, in the event that the Court considers the paragraph entitled "Defendant No. 5" on page 3 the Plaintiff's Complaint to name the Attorney General of Virginia as a Defendant. *See* Pl.'s Compl., Dkt. No. 1, p. 3.

## BACKGROUND AS TO STATE DEFENDANTS

The Plaintiff, Ivan Raiklin, who attempted to qualify as a candidate for the June 12, 2018 Republican Party of Virginia primary election for U.S. Senate, filed a pleading styled a "Complaint and Request for Emergency Injunction," Dkt. No. 1, on Monday, May 1, 2018. Through this pleading, Raiklin raises allegations against the Republican Party of Virginia (the RPV) and its Executive Director John Findlay, Christopher Piper in his official capacity as the Commissioner of Elections, the Virginia Department of Elections (the Department), and the Virginia State Board of Elections (the State Board), although he does not distinguish between his claims against the Commissioner, the Department, and the State Board. Raiklin lacks standing to assert claims against the State Defendants that relate to actions of the RPV, and, with respect to his claims against the State Defendants, fails to state a claim. As a result, Raiklin's Complaint should be dismissed.

## I.   Relevant Law.

Virginia law defines the realm of authority afforded to Virginia's political parties, and specifically provides that:

> [e]ach political party shall have the power to (i) make its own rules and regulations, (ii) call conventions to proclaim a platform, ratify a nomination, or for any other purpose, (iii) provide for the nomination of its candidates, including the nomination of its candidates for office in case of any vacancy, (iv) provide for the nomination and election of its state, county, city, and district committees, (v) perform all other functions inherent in political party organizations.

Va. Code § 24.2-508. In the context of candidate nomination, the *Code of Virginia* provides that "[t]he duly constituted authorities of the state political party shall have the right to determine the method by which a party nomination for a member of the United States Senate or for any

2

statewide office shall be made."[2]  *Id.* at § 24.2-509(A).  Additionally, "[o]nly a person meeting all the qualifications and fulfilling all the requirements of a candidate, and who has complied with the rules and regulations of his party, shall have his name printed on the ballot provided for the primary election."  *Id.* at § 24.2-525.  As this statutory language makes clear, political parties maintain a significant degree of control over the candidates who are entitled to participate in a party's primary election under Virginia law.

While Chapter 5 of Title 24.2 of the *Code of Virginia* establishes the requirements for "Candidates for Office," this chapter is further broken down into seven specific articles.  Article 2, addresses "Independent Candidates," while Article 3 addresses "Nominations of Candidates by Political Parties," and Article 4 addresses "Conduct of Primaries."  These distinct articles make it clear that the standards applicable to independent candidates and primary candidates are neither uniform nor interchangeable, and the law instead establishes different qualification processes for each category of candidates.

Regardless of the type of election a candidate wishes to participate in, all candidates must provide certain documentation to qualify for the ballot in Virginia.  The required documentation includes a Petition of Qualified Voters bearing the requisite number of qualified voters' signatures for the office sought.  *Id.* at §§ 24.2-506, 24.2-521.  Both candidates for party primary elections and independent candidates for a general election must file a petition signed by a sufficient number of qualified voters, and the only distinction between the filing requirements applicable to the two types of candidates are the deadline for submitting the signed petitions, and how these petitions are reviewed.

---

[2] Section 24.2-509(B) provides for certain exceptions to this general grant of authority, but as that exception does not apply to the RPV's 2018 nomination of a candidate for U.S. Senate, those exceptions are not relevant to this case.

The filing deadline for primary candidates' petitions falls seventy-five days before the primary election, while the filing deadline for independent candidates for the general election falls on the second Tuesday in June.  *Id.* at §§ 24.2-522, 24.2-507.  All U.S. Senate candidates must file their Statement of Qualification with the State Board of Elections.  *Id.* at § 24.2-501.  However, while all U.S. Senate candidates initially file their Declarations of Candidacy and Petition of Qualified Voters with the State Board of Elections, *id.* at §§ 24.2-506, 24.2-522(C), upon receipt of Petitions of Qualified Voters from primary candidates,

> [t]he State Board shall transmit the material so filed to the state chairman of the party of the candidate within 72 hours and not later than the seventy-fourth day before the primary.  The sealed containers containing the petitions for a candidate may be opened only by the state chairman of the party of the candidate.

*Id.* at § 24.2-522(C).  Petitions of Qualified Voters filed by primary candidates are reviewed by the political party holding the primary, while Petitions of Qualified Voters filed by independent candidates are reviewed by state and local election officials.  *Id.* at § 24.2-527 (When a political party's chairman certifies candidates for inclusion on the party's primary ballot, "the chairman shall certify that a review of the filed candidate petitions found the required minimum number of signatures of qualified voters for that office to have been met.").

While an independent candidate for office "who does not qualify to have his name appear on the ballot by reason of the candidate's filed petition not containing the minimum number of signatures of qualified voters for the office sought" may appeal that determination to the State Board of Elections, *id.* at § 24.2-506(C), the *Code of Virginia* provides no such right of appeal for primary candidates, *id.* at § 24.2-527.

4

II.     **Statement of Facts as to the State Defendants.**[3]

The RPV designated a primary election as its method of candidate nomination for the 2018 U.S. Senate general election.   *See* "2018 June Primary Elections," available at: https://www.elections.virginia.gov/Files/CandidatesAndPACs/Primary/2018JunePrimaries.pdf. As a result, candidates for this office were required to file their qualifying documentation no later than March 29, 2018.  Va. Code § 24.2-522.  Following its review of Raiklin's voter petition pages, the RPV concluded that Raiklin provided insufficient number of signatures of qualified voters to qualify for the primary ballot.  Pl.'s Compl., Dkt. No. 1, p. 9.

Following the Department's receipt of the RPV's Party Certification of Primary Candidates, Raiklin reached out to the Department to request information regarding filing an appeal.  *Id.*  The Department notified Raiklin that

> Virginia law does not allow candidates for nomination by a party primary to appeal this type of determination to the State Board of Elections.  Sections 24.2-506 and 24.2-5343 of the *Code of Virginia* and 1 VAC 20-50-30 […] establish petition requirements and appellate procedures for independent candidates, which do not apply to candidates for nomination by a political party.  Instead, petition requirements for candidates for nomination by a non-presidential primary are established by Va. Code Section 24.2-521.  Section 24.2-521 does not provide an avenue by which candidates for nomination by a primary can appeal a political party's determination that they have failed to submit sufficient petition signatures. As the laws and regulation you reference do not apply to individuals who are seeking their political party's nomination in a primary election, and Virginia law does not authorize an appeal for candidates for party nomination, thus you are not eligible for an appeal hearing pursuant to Section 24.2-506, and a hearing will not be scheduled.

*Id.*

---

[3] The State Defendants were not privy to Raiklin's communications with the RPV or its staff and representatives (nor does the Plaintiff allege that the State Defendants had any part in these interactions), and as such the State Defendants take no position on the Plaintiff's factual assertions regarding his dealings with the RPV and its staff or representatives.

Raiklin asserts that, after further discussions with the RPV, he was provided an opportunity to review the RPV's list of registered voters.  *Id.* at p. 10.  Raiklin asserts that his "campaign finally obtained copies of all of the 9th congressional district petition signatures that the RPV checked to do a full audit against the Virginia Voter Registration System from the 9th congressional district," and that by comparing these petition signatures to "the Montgomery County Virginia Voter Registration System data" and "the GOP Data Center data," his campaign "has identified 415 signatures of Virginia registered voters from the 9th Congressional District."  *Id.*  Raiklin further claims that these 415 signatures "include[] at least 309 of these signatures certified by the RPV and another minimum of 106 petitioners that were disqualified by 1VAC20-50-20 section C. 5 and section E. 3."  *Id.*

While engaging in these recounts, Raiklin alleges that his campaign requested a list of registered voters in the 9th Congressional District.  *Id.*  Pursuant to § 24.2-405(A) of the *Code of Virginia*, the Department is permitted to provide these lists only to seven specific classes of individuals or entities.[4]  While the Department had not received Raiklin's request for the list of

---

[4] Section 24.2-405(A) provides that:

> The Department of Elections shall provide, at a reasonable price, lists of registered voters for their districts to (i) courts of the Commonwealth and the United States for jury selection purposes, (ii) candidates for election or political party nomination to further their candidacy, (iii) political party committees or officials thereof for political purposes only, (iv) political action committees that have filed a current statement of organization with the Department of Elections pursuant to § 24.2-949.2, or with the Federal Elections Commission pursuant to federal law, for political purposes only, (v) incumbent officeholders to report to their constituents, (iv) nonprofit organizations that promote voter participation and registration for that purpose only, and (vii) commissioners of the revenue, as defined in § 58.1-3100, and treasurers, as defined in § 58.1-3123, for tax assessment, collection, and enforcement purposes.  The lists shall be furnished to no one else and used for no other purpose.  However, the Department of Elections is authorized to furnish information from the voter registration system to general registrars for their official use and to the Department of Motor Vehicles and other appropriate state agencies for maintenance of the voter registration system, and to

registered voters in the 9th Congressional District as of April 27, the Department nonetheless notified Raiklin that as he had not been certified by the RPV as a primary candidate, and as he had not filed a declaration of candidacy as an independent candidate for the general election, the Department would not provide the requested list.  Pl.'s Compl., Dkt. No. 1, p. 10.

On May 1, Raiklin filed a "Complaint and Request for Emergency Injunction" with the Court.  Pl.'s Compl., Dkt. No. 1.  The Court subsequently denied Raiklin's request for injunctive relief.  May 9, 2018 Order, Dkt. No. 5.

## ARGUMENT

I.   **Raiklin's Complaint should be dismissed as to the State Defendants pursuant to Fed. R. Civ. P. 12(b)(1), because Raiklin lacks standing.**

   a.   **Standard of Review.**

Article III of the U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  To meet the constitutional requirement of a 'case' or 'controversy,' "the party invoking the jurisdiction of the court must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing."  *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009); *see also Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)) ("The party invoking the jurisdiction of a federal tribunal bears the burden of establishing standing.").  To successfully demonstrate standing, the Plaintiff must show that:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

the Chief Election Officers of other states for maintenance of voter registration systems.

*Bishop*, 575 F.3d at 423 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)) (alteration in original).

There is also a prudential standing component, and when assessing this prudential component, "courts generally recognize three self-imposed constraints":

> First, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Second, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Third, "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."

*Id.*, 575 F.3d at 423 (internal citations omitted).

> **b. Raiklin does not have standing as to the State Defendants for Issues A and B.**

In his Complaint and Request for Emergency Injunction, the Plaintiff asserts four claims, lettered as Issues A through D. *See* Pl.'s Compl., Dkt. No. 1, p. 15-16. The Plaintiff cannot demonstrate that the injuries asserted in Issues A and B are fairly traceable to the actions of the State Defendants, or that the injuries asserted in Issues A and B would be redressed by a favorable decision as to the State Defendants. As such, the Plaintiff cannot show standing as to the State Defendants with respect to Issues A and B, and these claims should be dismissed as to the State Defendants.

In Issues A and B, the Plaintiff asks:

A. Did John Findlay, Executive Director of the Republican Party of Virginia in his official capacity, while acting under color of law as an agent of the Virginia Board of Elections during the pre-certification process of political candidates violate the Voting Rights Act, Section 10101(b) & 1st Amendment to the U.S. Constitution when he refused to conduct a ballot access pre-check in a timely manner and threatened to not conduct a pre-check of the campaign if the campaign did not agree to his delay of the pre-check?

B. Did John Findlay, Executive Director of the Republican Party of Virginia in his official capacity, while acting under color of law as an agent of the Virginia Board of Elections during the pre-certification process of political candidates

> violate the 14th Amendment to the U.S. Constitution Equal Protection Clause
> when he conducted the ballot access pre-check of the Ivan Raiklin for U.S. Senate
> Campaign in a uniquely dissimilar manner to the other four U.S. Senate
> Campaigns that filed their petitions?

*Id.* at p. 15. As noted above, under Virginia law, where a political party selects a primary election as its method of nomination, that political party is then tasked with reviewing candidates' voter petitions for the primary election. *See* Va. Code § 24.2-527. However, Virginia law neither provides for, nor requires, any type of "pre-check" of voter petitions.

Thus, while the Plaintiff alleges that Defendant John Findlay was "acting under color of law as an agent of the Virginia Board of Elections during the pre-certification process," Pl.'s Compl., Dkt. No. 1, at p. 15, there is no basis in law or fact to support this claim. The Plaintiff does not allege, nor could he, that Virginia law requires the RPV to provide any "pre-certification" or "pre-check process." Nor does he allege that the State Board or the Department were involved in Defendant RPV's "pre-certification" or "pre-check," or Defendant John Findlay's administration thereof. Despite the Fourth Circuit's clear admonition in *Bishop* that a "case must be dismissed for lack of standing" where a plaintiff does not include "the necessary factual allegations in the pleading," 575 F.3d at 424, the Plaintiff pleads no factual allegations that the State Defendants required, or participated in, the process of pre-certifying candidates for the RPV's primary to nominate the party's candidate for U.S. Senate.

Nor can Raiklin show redressability as to the State Defendants on Issues A and B. As Virginia law does not establish any "pre-check" or "pre-certification" review process, the State Defendants are not authorized to mandate any such process, or to impose any conditions with respect to its administration. And while the Plaintiff does not request any relief related to the pre-check process, were he to request such relief, it could be requested only against, and provided only by, the RPV and John Findlay.

9

Without such allegations, the Complaint must be dismissed against the State Defendants as to the first two issues listed on page 15 of the Plaintiff's Complaint.  As such, to the extent that the Plaintiff alleges that John Findlay or the RPV violated his constitutional rights in the context of a pre-check process, the Plaintiff cannot make the requisite showing to sustain standing as to the State Defendants for Issues A and B.

### c. Raiklin does not have standing as to the State Defendants because he cannot demonstrate an actual injury that is either traceable to, or redressable by, the State Defendants.

While Raiklin alleges that the State Defendants violated his constitutional rights, he fails to demonstrate any injury in fact that is traceable to the State Defendants or that could be redressed by a favorable opinion.  Instead of asserting that his petition pages contained the statutorily mandated 10,000 signatures, including 400 signatures from each congressional district, the Plaintiff alleges that when the State Defendants or the RPV

> Invalidates [*sic*] signatures from the proper congressional district, but not in the same precinct, the VBE violates the voting rights of these petitioners.  The denial of at least 97 signatures from the 9th Congressional district had the effect of invalidating the remaining over 12,500 signatures that intended to have the opportunity see and possibly vote for Ivan Raiklin in the U.S. Republican Party primary election.

> Unlike in *Anderson v. Poythress*, Raiklin's signatures were invalidated not because of illegibility or non registration [*sic*], but due to a precinct mismatch, something written into the Virginia code for administrative convenience to more easily keep track of registered voters, but not to outright deny them their right to vote.  This section of the code, then, constitutionally denied over 106 petitioners the right to vote which by extension denied the remaining over 12,500 petitioners to see a candidate of their choosing on the ballot.

Pl.'s Compl., Dkt. No. 1, at p. 35-36.  Accordingly, while he may couch this admission as an assertion that precinct assignments are used merely for administrative convenience,[5] the Plaintiff

---

[5] The State Defendants vehemently challenge this assertion.  Far from serving "administrative convenience," precinct assignments are the fundamental building block upon which Virginia's voter registration system is built, and the mechanism by which election administrators ensure

nonetheless admits that his petition pages did not contain a sufficient number of signatures of qualified voters.  *Id.*  Nor does the Plaintiff allege that the challenged regulatory provisions prohibited him from circulating petition pages for voter signatures, or otherwise interfered with his First or Fourteenth Amendment rights as a candidate.[6]  Where Raiklin admits that he failed to meet the statutory requirements for ballot access, his failure to collect a sufficient number of signatures from qualified voters cannot be traceable to the State Defendants.  Nor can such a failure be remedied by the State Defendants, because they are statutorily prohibited from allowing an unqualified candidate's name to be printed on a primary ballot.  Va. Code § 24.2-525.  As such, Raiklin cannot successfully demonstrate standing as to the State Defendants for any of his claims.

### II.   Raiklin's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because he failed to state a claim as to the State Defendants.

#### a.   Standard of Review.

##### i.   Standard of Review for Motions to Dismiss under Fed. R. Civ. P. 12(b)(6).

A Court evaluating a motion to dismiss under Rule 12(b)(6) must accept as true all of the factual allegations in a complaint, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

---

that qualified, registered voters receive the appropriate ballot.  This distinction is described in greater detail below.

[6] Additionally, to the extent that Raiklin attempts to assert claims on behalf of individuals who signed his petition pages, he fails to demonstrate any basis upon which he would be qualified to assert such claims on these voters' behalf.  Raiklin's Complaint falls far below the threshold necessary to demonstrate representational standing on these individuals' behalf.  *See Southern Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss under Rule 12(b)(6).  *Id.* (citing *Twombly*, 550 U.S. at 570).

While a plaintiff need not provide "detailed factual allegations" in an initial pleading, the pleading standard established in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  When faced with "conclusory allegations that amount to mere formulaic recitation of the elements of a claim," the Court must "conduct a context-specific analysis to determine whether the well-pleaded factual allegations plausibly suggest an entitlement to relief," and "need not accept conclusory allegations encompassing the legal effects of the pleaded facts."  *Sarvis v. Judd*, 80 F. Supp. 3d 692, 697 (E.D. Va. 2015) (internal citations omitted).  The Court may "properly take judicial notice of matters of public record" when considering a motion to dismiss.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

Additionally, although courts have recognized that a plaintiff's *pro se* status "means that his submissions should be held to less stringent standards than formal pleadings drafted by lawyers…. Nevertheless, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law."  *New v. Ashcroft*, 293 F. Supp. 2d 256, 257 (E.D.N.Y. 2003) (internal quotations and citations omitted).

### ii.  Standard of Review for Constitutional Challenges to State Election Regulations.

The Supreme Court of the United States has concluded that courts are to evaluate the constitutionality of statutes governing the conduct of elections by using the two-prong balancing test established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and modified in *Burdick v.*

*Takushi*, 504 U.S. 428 (1992).   As applied by the Supreme Court in *Burdick*, the *Anderson/Burdick* balancing test requires that

> a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789; citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213-14 (1986)).   Accordingly, in this case Plaintiff must initially show that the challenged statutes represent a burden on his rights.   If Plaintiff makes this showing, the Court must then determine whether this burden is justified by an appropriate State interest.

### b. The Commonwealth, the State Board, and the Department are entitled to Sovereign Immunity.

Raiklin "seeks remedy under 42 U.S.C. Code Section 1983 and FRCP 65."  Pl.'s Compl., Dkt. No. 1, p. 15.   However, the Commonwealth, the State Board, and the Department are entitled to sovereign immunity against Raiklin's claims.

It is well-settled that the Eleventh Amendment to the U.S. Constitution precludes lawsuits in federal court against states and state agencies.   The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. CONST. amend. XI.   This immunity extends to 42 U.S.C. § 1983 actions against states or state agencies.   *See Libertarian Party of Virginia v. State Board of Elections*, 2010 U.S. Dist. LEXIS 97177, *14 (E.D. Va. Sept. 16, 2010) (citing *Demuren v. Old Dominion Univ.*, 33 F.

Supp. 2d 469, 474-75 (E.D. Va. 1999), *aff'd*, 188 F.3d 501 (4th Cir. 1999)) ("Congress has never abrogated *Eleventh Amendment* immunity for states with regard to 42 U.S.C. § 1983 suits.").

The Commonwealth is thus clearly entitled to sovereign immunity against Raiklin's claims.  Furthermore, the U. S. District Court for the Eastern District of Virginia has repeatedly concluded that the Virginia State Board of Elections is entitled to sovereign immunity.  *See Libertarian Party*, 2010 U.S. Dist. LEXIS 97177 at *13-*15, *Smith v. Virginia*, 2009 U.S. Dist. LEXIS 60828, *7-*11 (E.D. Va. July 16, 2009).  Without restating the courts' thorough analysis in both *Smith* and *Libertarian Party of Virginia*, the State Defendants note that in each case the court concluded that the Virginia State Board of Elections qualified for sovereign immunity as an arm of the state.  In fact, as described in *Libertarian Party*,

> the Board of Elections functions as a quintessential 'arm of the State' with respect to approving candidates for official ballots and making other official election-related decisions.  A suit against the State Board of Elections is therefore functionally equivalent to a suit against the Commonwealth of Virginia, and the State Board of Elections is entitled to the same protections of sovereign immunity as the Commonwealth itself.

2010 U.S. Dist. LEXIS 97177 at *13-*14 (internal citation omitted).

In light of this precedent, it is readily apparent that the Commonwealth and the State Board are entitled to sovereign immunity as to Raiklin's claims.  While the Department was not established until 2014, and as such was not considered by the *Libertarian Party* or *Smith* courts, there can be no question that the Department, through which the State Board accomplishes its statutory responsibilities, is entitled to the same degree of immunity.  *See* Va. Code § 24.2-103 ("The State Board, through the Department of Elections, shall supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections.").

Furthermore, while Raiklin alleges monetary damages in the amount of $361,823, Pl.'s Compl., Dkt. No. 1, p. 11, all of the State Defendants are entitled to sovereign immunity against any claims for monetary damages under 42 U.S.C. § 1983.  *See Smith*, 2009 U.S. Dist. 60828 at *9 ("If it is Smith's intent to recover damages then, under the *Kitchen* test, the Commonwealth's *Eleventh Amendment* immunity clearly would extend to the [State] Board.").  Federal precedent leaves no doubt that States, state agencies, and state officers acting in their official capacities are immune to claims for monetary damages. *See, e.g.*, *Lynn v. West*, 134 F.3d 582, 587 (4th Cir. 1998) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").

Accordingly, Raiklin is not entitled to recover monetary damages from any of the State Defendants.  Nor is he entitled to pursue his claims against the Commonwealth, the State Board, or the Department, which are barred by these Defendants' sovereign immunity.

### c.   Raiklin's Claims Cannot Survive the *Anderson/Burdick* Test.

Raiklin's Complaint raises four issues for the Court's consideration.  As described above, the first two issues relate solely to the behavior of the Party Defendants.  As such, the State Defendants will address only Issues C and D in this section.[7]  Specifically, the Plaintiff describes Issues C and D as:

> C.      Did the Virginia Department of Elections violate the U.S. Constitution's 14th Amendment Equal Protection and Due Process Clauses when it refused to

---

[7] The State Defendants recognize that a political party can engage in state action when state law entrusts political parties with a role in the electoral process.  *See, e.g., Smith v. Allwright*, 321 U.S. 649 (1944).  However, as Virginia law does not establish a "pre-check" or "pre-certification" process for voter petitions, the State Defendants take the position that any "pre-certification" offered by the Party Defendants was not state action, but rather an intra-party function offered as a convenience to their candidates for nomination.

hear plaintiffs' [sic] appeal of the Executive Director of the Republican Party of Virginia's decision to disqualify Ivan Raiklin as a candidate for U.S. Senate Campaign due to petition signature insufficiency?

D.      Does Virginia Administrative Code 1VAC20-50-20 section C. 5 and section E. 3 requiring a petition signature to be from the same precinct as that listed in the Virginia Registered Voter System database—from the same Congressional District—violate the 1st and 14th Amendments to the U.S. Constitution?

Pl.'s Compl., Dkt. No. 1, p. 15-16.

### i.  The Department did not violate the 14th Amendment's Equal Protection and Due Process Clauses.

With respect to Issue C, the Plaintiff has not demonstrated any right to be placed on the ballot, nor has he demonstrated that he was not afforded an opportunity to secondary review of the RPV's initial determination.  Instead, the Plaintiff's Complaint and Request for Emergency Injunction assert that the Plaintiff failed to provide sufficient qualified voter signatures to qualify for ballot access, Pl.'s Compl., Dkt. No. 1, at p. 35-36, and that the RPV gave him an opportunity to appeal its determination, *id.*  While the Plaintiff may have preferred an appeal to the State Board of Elections, the Plaintiff cannot successfully show that he was denied an appeal, as he admits that the RPV reviewed its initial determination.  *Id.* at p. 10, 23-24.

And while Virginia law provides for an appeal to the State Board of Elections by independent candidates who are denied ballot access for the general, Virginia law does not provide a right of appeal to individuals who fail to qualify for a party primary.  *Compare* Va. Code § 24.2-506(C) and § 24.2-521.[8]  There is a clear legal and practical distinction between a

---

[8] The very language of § 24.2-506(C) of the *Code of Virginia* expressly provides that "[i]f a candidate, other than a party nominee, does not qualify to have his name appear on the ballot by reason of the candidate's filed petition not containing the minimum number of signatures of qualified voters for the office sought, the candidate may appeal that determination within five calendar days of the issuance of the notice of disqualification pursuant to § 24.2-612 or notice from the State Board that the candidate did not meet the requirements to have his name appear on the ballot."

candidate for a party primary, whose petitions are reviewed by a political party, and independent candidates for the general election, whose petitions are reviewed by state and local election officials.  Within the realm of party primary candidates, Raiklin is entitled to, and received from State Defendants, the same protections and rights as all other party primary candidates under Virginia law.

The General Assembly has adopted a statutory structure that allows political parties to utilize the state election mechanisms to nominate candidates for the general election via a primary election.  As a part of this process, political parties are entitled to determine whether potential primary candidates have "complied with the rules and regulations of his party."  Va. Code § 24.2-525.  However, during this process, political parties are also required to complete the administrative function of reviewing candidates' voter petitions and certifying to state officials which candidates have submitted the requisite number of qualified voters' signatures. *Id.* at § 24.2-527.  In light of this assignment of responsibilities, to require the State Defendants to provide a right of appeal for primary candidates who fail to qualify for the ballot would require state and local election administrators to re-create the petition review performed by party officials.

Especially as Raiklin asserts he was granted a secondary review within the RPV, and does not contest that his petitions contained insufficient signatures from qualified registered voters, he is unlikely to succeed in his claim that the Department violated his due process and equal protection rights by refusing to provide an appeal to the State Board.

### ii.   1 VAC 20-50-20(C)(5) and (E)(3) do not violate the 1st and 14th Amendments.

There can be no question that the Commonwealth is entitled to establish a signature requirement for ballot access.  In fact, this very Court previously noted that "States have an

important interest in 'requiring some preliminary showing of a significant modicum of support' before printing a candidate's name on the ballot, so as to 'avoid[] confusion, deception, and even frustration of the democratic process at the general election.'"  *Perry v. Judd*, 840 F. Supp. 2d 945, 958 (E.D. Va. 2012), *aff'd*, 471 Fed. Appx. 219 (4th Cir. 2012) (citations omitted) (alteration in original).   Raiklin does not challenge the total signature requirement or the requirement that candidates for U.S. Senate provide the signatures of at least 400 qualified voters from each congressional district, as required under § 24.2-521(1) of the *Code of Virginia*. Instead, he challenges the State Board regulations governing which signatures can be accepted during the review of a candidate's voter petition.

The Plaintiff asserts that the challenged regulatory sections "require[] a petition signature address be from the same precinct as that listed in the Virginia Voter Registration System—even though the signature is from a qualified Virginia voter and from the same Congressional district."  Pl.'s Compl., Dkt. No. 1, p. 32.  This requirement, he alleges, violates the 1st and 14th Amendments to the U.S. Constitution.   However, Raiklin simply cannot succeed in this argument, because his argument requires the Court to disregard the Commonwealth's statutory definition of a "qualified voter."   Pursuant to § 24.2-101 of the *Code of Virginia*, "qualified voter"

> means a person who is entitled to vote pursuant to the Constitution of Virginia and who is (i) 18 years of age on or before the day of the election or qualified pursuant to § 24.2-403 or subsection D of § 24.2-544, (ii) *a resident of the Commonwealth and of the precinct in which he offers to vote*, and (iii) a registered voter.

(emphasis added).  This statutory language makes it clear that a qualified voter is, by definition, required to reside in, and be registered to vote in, the precinct in which he offers to vote.  Any voter who does not reside in the precinct in which he offers to vote, then, is not a qualified voter.

Section 24.2-521 of the *Code of Virginia* establishes that candidates for nomination by primary must submit a voter petition "signed by the number of qualified voters specified in this section," and this requirement is integrated into the challenged regulatory provisions.

Not only do states have constitutional authority to prescribe the time, place, and manner of congressional elections, U.S. CONST. art. I, § 4, cl.1, but federal courts have long recognized states' role in establishing laws governing election administration, *see Storer v. Brown*, 415 U.S. 724, 730 (1974). Federal case law establishes that states are entitled to determine qualifications for voting, and to determine that a vote cast out-of-precinct is not a valid vote. As described by the U.S. Court of Appeals for the Sixth Circuit,

> [o]ne aspect common to elections in almost every state is that voters are required to vote in a particular precinct. Indeed, in at least 27 of the states using a precinct voting system, including Ohio, a voter's ballot will only be counted as a valid ballot if it is cast in the correct precinct.
>
> The advantages of the precinct system are significant and numerous: it caps the number of voters attempting to vote in the same place on election day; it allows each precinct ballot to list all of the votes a citizen may cast for all pertinent federal, state, and local elections, referenda, initiatives, and levies; it allows each precinct ballot to list only those votes a citizen may cast, making ballots less confusing; it makes it easier for election officers to monitor votes and prevent election fraud; and it generally puts polling places in closer proximity to voter residences.

*Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 568-69 (6th Cir. 2004). Where this is the case, Raiklin cannot successfully argue that the challenged regulations are unconstitutional.

## CONCLUSION

The Plaintiff alleges that the Commonwealth's ballot access procedures violate his rights under the First and Fourteenth Amendments. However, the Plaintiff fails to demonstrate he suffered any injury traceable to, or redressable by, the State Defendants, and as such his Complaint must be dismissed as to the State Defendants under Fed. R. Civ. P. 12(b)(1).

Additionally, sovereign immunity bars both the Plaintiff's claims against the Commonwealth, the State Board, and the Department and the Plaintiff's claim for monetary damages against all State Defendants.  Finally, the Plaintiff's constitutional challenge to 1 VAC 20-50-20(C)(5) and 1 VAC 20-50-20(E)(3) fails to state a claim.  As a result, his Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

WHEREFORE, the State Defendants respectfully request that the Court dismiss the instant action with prejudice.

Respectfully submitted,

THE COMMONWEALTH OF VIRGINIA, COMMISSIONER OF ELECTIONS CHRISTOPHER PIPER, THE VIRGINIA DEPARTMENT OF ELECTIONS, and THE VIRGINIA STATE BOARD OF ELECTIONS

By:___/s/_____Anna T. Birkenheier_____
  Anna T. Birkenheier (VSB No. 86035)
  Assistant Attorney General
  *Counsel for State Defendants*
  Office of the Virginia Attorney General
  202 North 9th Street
  Richmond, Virginia 23219
  Telephone: (804) 692-0558
  Facsimile: (804) 692-1647
  abirkenheier@oag.state.va.us

Mark R. Herring
Attorney General of Virginia

Stephen A. Cobb
Deputy Attorney General

Heather Hays Lockerman
Senior Assistant Attorney General

Anna T. Birkenheier (VSB No. 86035)*
Assistant Attorney General
Office of the Virginia Attorney General

202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0558
Facsimile: (804) 692-1647
abirkenheier@oag.state.va.us

*Counsel of Record for State Defendants*

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on May 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I hereby certify that I sent the forgoing document via overnight delivery and email to the following non-filing user:

Ivan E. Raiklin
2221 S. Clark Street
Arlington, VA 22202
E-mail Address: ivan@raiklin.com

I further certify that I have served a copy of the foregoing by electronic mail upon Chris Marston, counsel for the Republican Party of Virginia, Inc. and John L. Findlay in his capacity as Executive Director for the Republican Party of Virginia, at: chris.marston@gmail.com.

       /s/     Anna T. Birkenheier
Anna T. Birkenheier (VSB No. 86035)
Assistant Attorney General
*Counsel for State Defendants*
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0558
Facsimile: (804) 692-1647
abirkenheier@oag.state.va.us