IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IVAN E. RAIKLIN, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 3:18-cv-00288-JAG |
| ) | |
| VIRGINIA BOARD/DEPARTMENT ) | |
|    OF ELECTIONS, et al, ) | |
| ) | |
|    *Defendants*. ) | |
| _____) | |

## MEMORANDUM OF LAW IN SUPPORT OF PARTY DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants Republican Party of Virginia and John Findlay, in his official capacity as Executive Director of the Republican Party of Virginia (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss for lack of standing and failure to state a claim upon which relief can be granted.

### I. INTRODUCTION

Plaintiff believes that he should have qualified as a candidate for the Republican nomination for U.S. Senate in Virginia's June 12 Primary Election. Not only does his complaint fail to allege that he filed petitions with sufficient signatures under Virginia law to so qualify, he wrongly blames Defendants for his failure and asks this Court to declare him qualified. This Court, having correctly denied Plaintiff's motion for an injunction as barred by laches, should now dismiss his complaint as well.

Defendants created an optional process for its candidates, pre-check, in which those candidates may have their petition signatures checked for sufficiency prior to the final deadline

1

for submission of the petitions to the State Board of Elections. Plaintiff attempts to turn this optional process, provided as a courtesy to candidates, into a violation of his constitutional rights. This is a claim he simply cannot maintain.

As a *pro se* attorney, Plaintiff should be held to the same pleading standards as any party represented by an attorney. Under that standard, or even with the liberal construction afforded to other *pro se* litigants, Plaintiff's complaint does not make out a plausible claim for relief and should be dismissed. Plaintiff also lacks standing to assert his Voting Rights Act claim and it should be dismissed for that reason. His argument regarding the Commonwealth's petition signature requirements too is unavailing. Finally, under no circumstances would he be entitled to the damages he seeks.

## II. FACTS

Defendant Republican Party of Virginia (hereinafter, "RPV") chose a primary election to nominate its candidate for U.S. Senate in the 2018 General Election as authorized by law. Plaintiff's Complaint (Dkt. No. 1) at 16;[1] Va. Code § 24.2-509. Having made that choice, Virginia law set out the procedure for candidates to qualify for the primary ballot. Va. Code § 24.2-519 *et seq.* The law sets out a limited role for parties in this process. The party chairman must furnish the names of candidates for nomination to the State Board of Elections and, in so doing, "certify that a review of the filed candidate petitions found the required minimum number of signatures of qualified voters for that office to have been met." Va. Code § 24.2-527. Candidates must submit the petitions to the State Board of Elections, which then transmits the

---

[1] This brief uses the PACER PageID# for citations to Dk. No. 1 to avoid confusion between the two documents included in that filing.

petitions to the party chairman so that he can make the required certification. Va. Code § 24.2-522.

Plaintiff references the optional pre-check in his allegations without any explanation. Compl. at 6. Pre-check was an optional process created by RPV to assist candidates with reviewing petition signatures prior to the deadline for submission to the State Board of Elections in order to alert them to potential defects prior to that deadline. Plaintiff notes in his complaint that candidates had the option to have petition signatures reviewed prior to officially filing them with the State Board of Election. Compl. at 6, 29. Pre-check is a process of Defendants' own creation and not required by any state or federal statute. It was put in place after so many candidates were excluded from the 2012 Republican Presidential Primary ballot. *See Perry v. Judd*, 840 F.Supp.2d 945 (E.D. Va. 2012).

Plaintiff contacted Defendants to schedule a pre-check on March 26—4 days prior to the statutory deadline to submit petitions to the State Board of Elections. Compl. at 6. Plaintiff scheduled a pre-check session for March 28, as other prospective candidates had already scheduled sessions on March 26 and March 27. Compl. at 6. Scheduling an optional pre-check review was first-come, first-served. Plaintiff's campaign staff arrived later than scheduled on March 28. Compl. at 6. Because the pre-check could not be completed on March 28, Plaintiff's campaign staff returned on March 29. Compl. at 9. At approximately 3 pm, with signatures having been checked for ten of the 11 Congressional Districts, pre-check stopped so that Plaintiff could submit his petitions to the State Board of Elections by the 5 pm deadline. Compl. at 9. Upon the return of the petitions to Defendants by the State Board of Elections, review of petition signatures from the Ninth Congressional District was undertaken and determined that an insufficient number of valid signatures had been filed. Compl. at 9.

After performing his own review, Plaintiff confirmed that he had not filed sufficient valid signatures to meet the requirement of 400 signatures from the Ninth Congressional District. Of 415 signatures that appeared to match a name in the voter registration records, 309 were valid and 106 were invalid because of material omissions pursuant to State Board of Election's regulations at 1 Va. Admin. Code § 20-50-20(C)(5).[2] Compl. at 10.

Among the candidates who qualified, one candidate scheduled and successfully completed a pre-check on March 12, a second declined the opportunity to engage in a pre-check, leaving the check of the signatures until after his petitions had been filed with the State Board of Elections, and the third scheduled and successfully completed a pre-check on March 26. Compl. at 29.

### III. ARGUMENT

**A.    Legal Standard**

1.    *Pro se* attorneys are not entitled to liberal construction of pleadings given other *pro se* litigants.

*Pro se* litigants are usually entitled to have their pleadings given liberal construction. *See Gordon v Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). That rule applies only because they do not have the assistance of a lawyer in presenting their claims. *See Rashad v. Jenkins*, 3:15cv655, 2016 WL 901279 (E.D. Va. Mar. 3, 2016). As noted in *Rashad*, while the Fourth Circuit has not addressed this rule directly, other courts have drawn a distinction between *pro se* attorneys and

---

[2] "The following omissions related to individual petition signatures are always material and any petition signature containing such omission shall be rendered invalid if: … The signer provided an address that does not match the petition signer's address in the Virginia voter registration system, unless the signer provided an address that is within the same precinct where a voter is currently registered in the Virginia voter registration system, and the signer can be reasonably identified as the same registered voter."

other *pro se* parties. *See*, e.g., *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001).

Pursuant to Fed. R. Evid. 201(b)(2), this Court may take judicial notice that Plaintiff is a licensed attorney in New York and has been since 2005. The results of a search of the New York State Unified Court System's attorney database listing Ivan Raiklin as currently registered is attached as Exhibit 1.[3]

2.  <u>Rule 12(b)(6) requires not only adequate notice, but also sufficient facts to make out a plausible claim for relief.</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a plausible claim for relief; a speculative or conceivable claim is not sufficient. "[T]he Supreme Court has, with *Iqbal* and *Twombly*, rejected the sufficiency of complaints that merely allege the possibility of entitlement to relief, requiring plausibility for obtaining such relief and thus rejecting a complaint in which the plaintiff relies on speculation." *McCleary-Evans v. Md. Dept. of Transportation*, 780 F.3d 582 (4th Cir. 2015) citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

As the Fourth Circuit explained in *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009), the Federal Rules of Civil Procedure require more than simple notice pleading. While "aimed at assuring that the defendant be given adequate notice of the nature of the claim being made against him, [Rules 8, 9, 10, 11, and 12(b)(6)] also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Id.* at 192.

---

[3] New York State Unified Court System, Attorney Search, http://iapps.courts.state.ny.us/attorney/AttorneySearch (May 22, 2016).

A complaint must both provide notice of the nature of the claims and set out sufficient facts to make a plausible claim for relief. Plaintiffs complaint fails on both counts.[4]

Even non-attorney *pro se* litigants are not excused from the pleading requirements set out in *Twombly* and *Iqbal*. Other courts in this District have explicitly noted that *Twombly* and *Iqbal* cases are still applicable in evaluating a *pro se* litigant's pleadings. *See, e.g., Polidi v. Bannon*, 226 F.Supp.3d 615, 621 (E.D. Va. 2016); *Falkiner v. Onewest Bank*, 780 F.Supp.2d 460, 462-463 (E.D. Va. 2011).

### 3. Rule 12(b)(1) requires standing to establish subject matter jurisdiction.

Standing is a threshold question in every case before a federal court. To determine standing, a federal court must ask "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Another court in this District explains the history of the standing requirements of the Voting Rights Act. *See Perry-Bey v. City of Norfolk*, 678 F.Supp.2d 348 (E.D. Va. 2009). Section 3 of the Voting Rights Act of 1965, 52 U.S.C. § 10302, outlines proceedings to enforce the right to vote. The Voting Rights Act was originally understood to confer standing on the Attorney General. However, in *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), the Supreme Court held that private litigants seeking to protect their voting rights could bring an action. *Perry-Bey*, 678 F.Supp.2d at 362, 363. Congress amended the Voting Rights Act to explicitly confer standing on "aggrieved persons." *Id.*

---

[4] For purposes of this motion, Defendants treat the matter labeled "issues" in the Plaintiff's filing as counts, and addresses the three counts that appear to be directed toward Party Defendants. Plaintiff labels his issues using letters under the heading of "Issues," Compl. 16-17, and with numbers under the heading of "Analysis," Compl. 25, 28, 30, 32. For purposes of this memorandum, Defendants refer to the issues by letter.

Another court in this District further examined the statutory "aggrieved persons" requirement in *White-Battle v. Democratic Party of Virginia*, 323 F.Supp.2d 696 (E.D. Va. 2004). In *White-Battle*, the Court noted that "[i]t is well settled that unsuccessful candidates lack standing to sue under the Voting Rights Act of 1965. *See Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989); *see also McGee v. City of Warrensville Heights*, 16 F.Supp.2d 837, 845-46 (N.D. Ohio 1998)." 323 F.Supp.2d at 702-3 *cited with approval in Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.*, 214 F.Supp.3d 448, 453 (D. Md. 2016).

**B.      Plaintiff has failed to state a claim under the Voting Rights Act and the First Amendment**

In Issue A, Plaintiff attempts to make out claims under the Voting Rights Act[5] and the First Amendment, but Plaintiff fails to plead a plausible claim. Specifically, Plaintiff lacks standing to assert his Voting Rights Act claim, and even if he did have standing (he does not), he has failed to allege required elements of the claim. He has likewise failed to set forth any facts

---

[5] While Plaintiff refers to the Voting Rights Act in his complaint and analysis, he cites a provision of the Civil Rights Act, 52 U.S.C. § 10101(b). The language of the Civil Rights Act is very similar to section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b), so Defendants treat the claim as arising under section 11(b).

"No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for the office of President, Vice President, presidential elector, Member of the Senate, or Member of the House of Representatives, Delegates or Commissioners from the Territories or possessions, at any general, special, or primary election held solely or in part for the purpose of selecting or electing any such candidate." Civil Rights Act, 52 U.S.C. § 10101(b).

"No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten or coerce any person from voting or attempting to vote, or intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 3(a), 6, 8, 9, 10, or 12(e) [52 U.S.C. § 10302(a), former 42 U.S.C. § 1973d, 52 U.S.C. § 10305, former 42 U.S.C. § 1973g, 52 U.S.C. § 10306, or § 10308(e)]." Voting Rights Act of 1965, 52 U.S.C. §10307(b).

7

that demonstrate any actionable or plausible claim of intimidation, threats or coercion under the Act. Moreover, Plaintiff has failed to make out any intelligible claim under the First Amendment.

    1.    <u>Plaintiff lacks standing to assert a Voting Rights Act claim.</u>

Plaintiff attempts to invoke the protection of the Voting Right Act of 1965, 52 U.S.C. §10301 *et seq.*, but its protections are for voters who suffer actual intimidation and not unsuccessful candidates, who, under well-settled law, are not entitled to its protection.

In *White-Battle*, in explaining the lack of standing by an unsuccessful candidate, that Court noted "the divergence between the interests of an unsuccessful candidate and citizens trying to enforce their right to vote." 323 F.Supp.2d at 703 (internal citations omitted). Although the unsuccessful candidate in *White-Battle* qualified for the election and lost, Plaintiff here, not having qualified for the election, is similarly situated as an unsuccessful candidate. His complaint pursues his interest, any claim that it pursues the interest of voters is unsupported. No voters are parties to the complaint and Plaintiff does not allege third-party standing to pursue a claim on their behalf.

    2.    <u>Plaintiff fails to state a plausible claim of conduct that violates the Voting Rights Act.</u>

Plaintiff offers no allegations that could plausibly make out a case for violation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b). First, as another Court in this District has held, a case for violation of Section 11(b) must include an allegation of racially-based animus behind the "intimidation, threats, or coercion." *See Parson v. Alcorn*, 157 F.Supp.3d 479, 498-99 (E.D. Va. 2016). Plaintiff makes no such allegation and thus on this basis alone the matter must be dismissed under Rule 12.

Second, Plaintiff's claim is furthermore without merit because the conduct alleged related to the optional pre-check offered by Defendants, which is not "an action necessary to make a vote effective" and therefore not within the scope of Section 14(b) of the Voting Rights Act, 52 U.S.C. § 10310(b). As Plaintiff notes in his complaint, one candidate whom the Party certified as having sufficient signatures did not avail himself of the pre-check process at all, so the optional pre-check for candidates simply cannot be the type of activity covered by the statute. Compl. at 29. Pre-check is not a rule "concerning candidacy requirements and qualifications" that falls within the scope of the definition of voting in section 14(b) of the Voting Rights Act. *Morse v. Republican Party of Virginia*, 517 U.S. 186. In fact, it is not a rule or requirement at all. The rules to which *Morse* refered concern state enactments and party rules of the type that would have been required to be submitted for pre-clearance under Section 5. *See Allen v State Board of Elections*, 393 U.S. 544 at 566 (1969). The optional pre-check, which does not change the underlying requirement that the Party certify the sufficiency of petition signatures by a particular date, is not such an enactment or rule. Unlike the convention fee invalidated in *Morse*, the pre-check imposes no additional impediment to ballot access.

Third, Plaintiff has not alleged conduct that could plausibly be considered to violate the extremely high standard of Section 11(b). Plaintiff's allegations include Defendants "looking paranoid," "stat[ing] he didn't like the way the count was going," using foul language, and suggesting that pre-check would not be available. Compl. at 27-28. Plaintiff also alleges that Defendants "provided significant pushback" and required the pre-check continue over to the next day. Compl. at 6. None of those facts constitute intimidation, threats or coercion of the type contemplated by Congress.

The overwhelming weight of jurisprudence is against the Plaintiff. In one of the few recent precedents reaching this issue under Section 11(b), much more serious and egregious conduct was found *not* to violate 11(b). *United States v. Brown*, 494 F.Supp.2d 440, 477 n.56 (S.D. Miss. 2007). Defendant Ike Brown, chair of Noxubee County Democratic Executive Committee, took out a newspaper advertisement threatening to challenge the votes of 174 voters. The court did "not view the publication as the kind of threat or intimidation that was envisioned or covered by Section 11(b)." *Id.* at 477 n.56. Brown also directly confronted a voter attempting to cast a ballot, loudly ordering the voter to get away from the entrance to the polling place. When the voter refused, Brown summoned uniformed and armed police officers. The court also found this conduct not violative of Section 11(b). *Id.* at 472.

The Court in *Brown* also stated that "it has found no case in which plaintiffs have prevailed under [Section 11(b)]." *Id.* Plaintiffs have been uniformly unsuccessful in asserting 11(b) claims and the facts here do not even approach those other failed cases. *See, e.g., United States v. McLeod*, 385 F.2d 734, 741 (5th Cir. 1967); *Willing v. Lake Orion Community Schools*, 924 F.Supp. 815, 820 (E.D. Mich. 1996); *Pincham v. Illinois Judicial Inquiry Bd.*, 681 F.Supp. 1309, 1314-17 (N.D. Ill. 1988); *Gremillion v. Rinaudo*, 325 F.Supp. 375, 276-77 (E.D. La. 1971); *United States v. Harvey*, 250 F.Supp. 219 (E.D. La. 1966).

3. <u>Plaintiff's First Amendment claim fails to provide sufficient notice under Rule 8 and *Twombly*.</u>

With respect to the First Amendment, Plaintiff makes only a bald assertion that Defendants conduct violates some unspecified First Amendment interest. Oddly, when Plaintiff quotes from the First Amendment under the heading "Laws Pertinent to the Case," he cites only a portion of its text that appears to bear no relation to the facts alleged—"Congress shall make no law […] abridging the freedom to petition the Government for a redress of grievances." Compl.

10

at 17. Absent any detail other than a quotation from the Petition clause of the First Amendment, Defendant cannot make out the nature of the claim, so, under the Fourth Circuit's analysis of the *Twombly* standard in *Francis v. Giacomelli*, Defendant should not be held to answer for it. 588 F.3d at 192. For this reason as well, Defendants' motion should be granted.

### C.     Plaintiff fails to state a claim under the Equal Protection Clause

Under Issue B, Plaintiff attempts to make out a claim under the Equal Protection Clause of the 14th Amendment. As in Issue A, Plaintiff confuses the optional pre-check with the mandatory certification by Defendants, asserting state action where none occurred. Additionally, Plaintiff fails to make sufficient allegations to make out a plausible claim for relief, instead, providing nothing more than a conclusory assertion without sufficient facts to put Defendants on notice of the nature of the claim.

#### 1.     Defendants' pre-check does not qualify as state action.

To establish a violation of the Equal Protection clause, Plaintiff must show Defendant's action constitute a prohibited state action. The Supreme Court held in the "white primary" cases that a political party's actions can be considered state actions when the political party performs a traditional government function, such as administration of a primary election.[7] *See Nixon v. Condon*, 286 U.S. 73 (1932); *Smith v. Allwright*, 321 U.S. 649 (1944); and *Terry v. Adams*, 345 U.S. 461 (1953). Virginia has delegated to the major political parties a limited part in administering primaries; the function at issue in this case is the ministerial duty of determining whether a candidate has filed petitions with sufficient signatures to qualify for a position on the

---

[7] Plaintiff cites *Socialist Workers Party v. Hechler*, 890 F.2d 1303 (4th Cir. 1989), in support of this proposition. However, *Hechler* dealt with the validity of provisions of West Virginia's election laws; it did not impute action by a political party or any other private actor to the state.

11

primary ballot. *See* Va. Code § 24.2-527. The responsibility of the party here is very narrow—the political party, acting through its chairman, furnishes the names of the candidate to the State Board of Elections and, in so doing certifies that a review of the filed candidates' petitions found the required minimum number of signatures. *Id.* The Virginia Code reserves most of the decisions about this process to the State:

- The Code sets the number of signatures required. *See* Va. Code § 24.2-521.
- The Code sets out the forms and information that the candidates must file. *See* Va. Code § 24.2-519, 520.
- In the case of a statewide primary, the candidates even deliver their forms and filing fees to the State Board of Elections, not to the party chair. *See* Va. Code § 24.2-522, 523.

The only responsibility of the party chair at issue in this case is to accept the petitions filed with the State Board of Elections and return the names of anyone who filed petitions a review of which indicates a sufficient number of valid signatures.

This very narrow delegation of a ministerial function is very different from the facts in the "white primary" cases, where Texas delegated the conduct of the entire primary to its political parties, leaving the parties sufficient flexibility to effectively prohibit black citizens from voting. *Smith*, 321 U.S. at 655-657.

While the RPV Chair's act of furnishing the names and certifying the sufficiency of the petitions may constitute a state action under the case law, other activities undertaken by Defendants are not brought within the scope of state action simply because they relate to certification.

The optional pre-check is not the certification itself, nor is it a necessary pre-requisite to certification. As Plaintiff notes in his complaint, one qualified candidate filed his petitions with the State Board of Elections without first availing himself of the opportunity for a pre-check. Compl. at 29. Giving candidates the opportunity to check the sufficiency of their petitions before filing with the Board is a courtesy extended by the Party. In this way, it is no different than any number of other common party activities that clearly do not qualify as "traditional government functions" or "state action." For example, the Party provides advice to candidates about filing requirements, it makes provision for candidates to access the voter list, it allows candidates to take advantage of contracts it has negotiated for voter contact systems, it provides fora for candidates to meet with likely primary voters. But none of these activities rises to the level of state action simply because the party chair carries out a ministerial function in the process of candidate qualification.

Without a plausible allegation of state action, Plaintiff's claim must fail.

2. <u>Plaintiff's Equal Protection claim fails to provide sufficient notice under *Twombly*.</u>

In his Equal Protection claim, Plaintiff simply repeats factual allegations regarding the certification of other candidates for the primary and then asserts "RPV failed to follow a uniform procedure from candidate to candidate in the ballot access validation process…." Compl. at 29. Plaintiff, however, has wholly failed to describe this claim with any particularity as required by *Twombly*. While he does allege there are some insignificant differences between review of the candidates' petitions, he points to none that suggest lack of a "uniform process." Plaintiff alleges use of an improper database, but makes no allegation that a different database was used to review other candidates' petition signatures. Compl. at 29. Plaintiff alleges that other campaigns were reviewed on other dates, but Plaintiff does not allege that review of his petitions was scheduled

13

using a different process. *Id.* Plaintiff alleges that other reviews were completed more quickly than his, but alleges no difference in the process used to account for the difference in the amount of time taken for a review. *Id.* Plaintiff alleges that one campaign did not engage in pre-check, but rather relied on a review after submitting its petitions to the State Board of Elections. *Id.* That another candidate made a different choice does not suggest lack of a uniform process. In the end, Plaintiff merely speculates that because of different outcomes, the process must not have been uniform. Because he has not provided any explanation for this conclusory allegation, he has failed to make out a plausible claim for relief under *Twombly*.

**D.     The Virginia Administrative Code's Signature Requirements do not violate the 1st and 14th Amendments.**

In Issue D, Plaintiff alleges that the rules requiring the invalidation of some petition signatures are unconstitutional. Once again, his complaint fails to make out a plausible claim. As State Defendants argue persuasively in their motion to dismiss, the regulatory requirements relating to the validity of petition signatures are well within the authority of the Commonwealth to enact and not at all violative of constitutional protections; they are well-founded in Virginia's voter qualification laws. Mem. in Supp. of State Defs.' Mot. to Dismiss. Dkt. No. 8, 17-19. As such, Plaintiff has no plausible claim to having petitions with sufficient valid signatures to qualify for a place on the ballot.

**E.     Plaintiff is not entitled to money damages.**

This Court should also dismiss Plaintiff's unsupported request for monetary damages. Plaintiff's claim in this regard fails for several reasons.

   1.     <u>Monetary damages are inappropriate relief.</u>

First, as courts within this District have repeatedly held, equitable relief is the only appropriate form of relief in ballot access cases like the present action. *Perry v. Judd*, 840 F.Supp.2d 945, 953 (E.D. Va. 2012); *Lux v. Judd*, 842 F.Supp.2d 895, 904 (E.D. Va. 2012); *Amarasinghe v. Quinn*, 148 F.Supp.2d 630, 634 (E.D. Va. 2001). Specifically, in a ballot access suit, a plaintiff's alleged injury can only be remedied by placing his name on the ballot. Here, the Court has already denied the equitable relief sought by Plaintiff—an injunction relating to the holding of the primary—as barred by laches. That Plaintiff's own delay precluded any possibility of appropriate relief should not allow him to seek money damages instead.

2. <u>Federal election law bars Plaintiff from recovering damages in lieu of contributions.</u>

The Federal Election Campaign Act of 1971, as amended, 52 U.S.C. §30101 *et seq.*, governs contributions to federal candidates and the use of campaign funds. Only an authorized committee of a federal candidate, not the candidate himself, may receive contributions. 52 U.S.C. § 30102(e). Moreover, under federal law, the assets of an authorized committee may not be converted to personal use of the candidate. 52 U.S.C. § 30114(b). Ivan Raiklin's principal campaign committee, Ivan Raiklin for US Senate, is not a party to this proceeding, so special damages based on contributions not received cannot be awarded.

3. <u>The amount of special damages Plaintiff claims is entirely speculative.</u>

Even if Plaintiff were entitled to the special damages he seeks (he is not), such damages may not be speculative, but must be specifically stated. "Fed. R. Civ. P 9(g) requires that 'special damages,' namely, those that are not the 'ordinary result' of the conduct alleged, 'shall be specifically stated.' *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1266 (10th Cir. 2007)." *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703 (4th Cir. 2014). Plaintiff's alleged damages are certainly not the "ordinary result" of Defendants' alleged

15

conduct. Further, the $350,000 for lost campaign contributions is entirely speculative and unrealistic and no facts that could be adduced would plausibly support such an award. Plaintiff's principal campaign committee raised less than $20,000 in the first three months of 2018.[8] Federal Election Commission, *Ivan Raiklin for US Senate Committee Filings, April Quarterly* 2018 (April 14, 2018) https://www.fec.gov/data/committee/C00653790/?tab=filings. To expect that in the fourth month of the year, he would raise nearly eight times what he raised in the first three months is unsupportable. For purposes of comparison, the three candidates who qualified for the ballot raised the following amounts in the first three months of the year:

Corey Stewart raised nearly $220,000. Federal Election Commission, *Stewart for Senate Inc, April Quarterly 2018* (April 13, 2018) https://www.fec.gov/data/committee/C00650374/?cycle=2018&tab=filing.

Nick Freitas raised nearly $343,00.Federal Election Commission, *Nick Freitas for US Senate, April Quarterly 2018* (Apr. 13, 2018) https://www.fec.gov/data/committee/C00665570/?tab=filings.

E. W. Jackson raised just over $130,000. Federal Election Commission, *Jackon-US Senate, April Quarterly 2018* (Apr. 17, 2018) https://www.fec.gov/data/committee/C00665554/?cycle=2018&tab=filings.

## IV. CONCLUSION

---

[8] The Court may take judicial notice of filings with the Federal Election Commission under Fed. R. Evid. 201(b)(2). The Fourth Circuit has held that taking judicial notice under Rule 201(b)(2) does not convert a Rule 12(b) motion into a Rule 56 motion for summary judgement. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

16

For all of the above reasons, Defendants respectfully request that this Court grant Defendants' motion and dismiss Plaintiff's complaint in its entirety with prejudice. Defendants also request such other relief as the Court deems appropriate.

By:   /s/   Christopher M. Marston
Christopher M. Marston (VSB No. 65703)
General Counsel
*Counsel for Party Defendants*
Republican Party of Virginia
115 E Grace St
Richmond VA 23218
Telephone: (571) 482-7690
Facsimile: (703) 997-2549
Email: cmarston@rpv.org